UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ELIYAHU "ELI" WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH "ARI" BROMBERG

Hon. Michael A. Shipp

Crim. No. 24-128

BRIEF OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS' OMNIBUS PRETRIAL MOTIONS

PHILIP R. SELLINGER
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:
JONATHAN FAYER
CAROLYN SILANE
MARK PESCE
Assistant United States Attorneys

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT .......................................................................................................... 5

I.  THE COURT SHOULD DENY DEFENDANTS' MOTIONS FOR A BILL OF
    PARTICULARS BECAUSE THE DETAILED INDICTMENT AND FULSOME
    DISCOVERY PROVIDE THE DEFENDANTS WITH MORE THAN ENOUGH
    INFORMATION TO PREPARE THEIR DEFENSE AND AVOID UNFAIR
    SURPRISE............................................................................................................ 5

    A.  Applicable Legal Standards........................................................................ 6

    B.  The Defendants Are Not Entitled To A Bill Of Particulars ......................... 7

    C.  Bromberg's Specific Requests For Particulars Are Unnecessary ................. 9

        1. Specific Communications With And Misrepresentations to Victims........ 9

        2. The Names of Anonymized Companies Is Moot ..................................... 10

        3. The Names Of Anonymized Victims And All Victim Investors ............. 10

        4. The Names Of Unindicted Coconspirators And Location
           Information............................................................................................. 11

        5. Details About The Obstruction Conspiracy Charged In Count
           Seven ..................................................................................................... 12

    D.  Weinstein's Request For Particulars About Securities Is Also
        Unnecessary ............................................................................................. 12

II. THE COURT SHOULD DENY WEINSTEIN'S MOTION TO DISMISS
    COUNT SEVEN OF THE INDICTMENT. ........................................................ 13

    A.  The Legal Standard ................................................................................... 13

    B.  Weinstein Ignores the Discharge of Duty Prong of the Obstruction Statute
        and that Restitution Judgments Are Pending Judicial Proceedings.......... 16

    C.  The Term of Supervised Release Was Itself A Pending Proceeding. ......... 19

III. WEINSTEIN'S MOTION TO SEVER COUNT SEVEN OF THE
     INDICTMENT IS MERITLESS. ....................................................................... 23

A. Severance of Charges Should be Denied Because Evidence of Weinstein's Prior Convictions are Admissible as to Both Charges .................................. 23

B. Weinstein's Prior Convictions Are Intrinsic to Counts One through Six of the Indictment ............................................................................................... 25

C. Weinstein's Prior Convictions Are Alternatively Admissible Under Rule 404(b) ............................................................................................................ 29

1. The Legal Standard ................................................................................. 30

2. Weinstein's Prior Convictions Are Admissible under Rule 404(b) for Non-Propensity Purposes .................................................................. 32

3. Weinstein's Prior Convictions Are Admissible under Rule 403 ............. 34

III. WEINSTEIN'S MOTION FOR SUPPLEMENTAL *BRADY* DISCLOSURES SHOULD BE DENIED ..................................................................................... 37

CONCLUSION ....................................................................................................... 39

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Hamling v. United States,*
   418 U.S. 87 (1974) ........................................................................................... 14

*Jersey Media Grp. Inc v. United States,*
   836 F.3d 421 (3d Cir. 2016) ............................................................................... 8

*United States v. Aguilar,*
   515 U.S. 593 (1995) ......................................................................................... 15

*United States v. Armocida,*
   515 F.2d 49 (3d Cir. 1975) ............................................................................... 10

*United States v. Atwell,*
   Crim. No. 13-560 (FLW), 2015 WL 2092687 (D.N.J. May 5, 2015) ...................... 9

*United States v. Bailey,*
   840 F.3d 99 (3d Cir. 2016) .......................................................................... 26, 28

*United States v. Bard,*
   No. 1:12-CR-181, 2013 WL 3157551 (M.D. Pa. June 20, 2013) .......................... 29

*United States v. Bellomo,*
   263 F. Supp. 2d 561 (E.D.N.Y. 2003) ................................................................. 6

*United States v. Bergrin,*
   650 F.3d 257 (3d Cir. 2011) ............................................................................. 14

*United States v. Bergrin,*
   682 F.3d 261 (3d Cir. 2012) ........................................................................ 32, 37

*United States v. Besmajian,*
   910 F.2d 1153 (3d Cir. 1990) ........................................................................... 14

*United States v. Boffa,*
   513 F. Supp. 444 (D. Del. 1980) ..................................................................... 8, 9

*United States v. Bowie,*
   232 F.3d 923 (D.C. Cir. 2000) .......................................................................... 26

*United States v. Butch,*
   256 F.3d 171 (3d Cir. 2001) ............................................................................. 34

*United States v. Cafaro,*
   480 F. Supp. 511 (S.D.N.Y. 1979) ...................................................................... 9

*United States v. Caldwell,*
   760 F.3d 267 (3d Cir. 2014) ............................................................................. 30

*United States v. Claxton,*
   766 F.3d 280 (3d Cir. 2014) ............................................................................. 31

*United States v. Coburn,*
   439 F. Supp. 3d 361 (D.N.J. 2020) ..................................................................... 8

*United States v. Cocchiola,*
   358 F. App'x 376 (3d Cir. 2009) ....................................................................... 38

*United States v. Crayton,*
   357 F.3d 560 (6th Cir. 2004) ............................................................................ 11

*United States v. Cross*,
  308 F.3d 308 (3d Cir. 2002)............................................................................... 32
*United States v. Cruz-Garcia*,
  344 F.3d 951 (9th Cir. 2003) ............................................................................ 32
*United States v. Daraio*,
  445 F.3d 253 (3d Cir. 2006)............................................................................... 31
*United States v. Davis*,
  183 F.3d 231 (3d Cir. 1999) ....................................................................... 14, 21
*United States v. DeLaurentis*,
  230 F.3d 659 (3d Cir. 2000)............................................................................... 14
*United States v. Delle Donna*,
  552 F. Supp. 2d 475 (D.N.J. 2008) ................................................................... 11
*United States v. Devos Ltd.*,
  No. 14 CR 574, 2017 U.S. Dist. LEXIS 3744 (E.D.Pa. Jan. 10, 2017)............... 10
*United States v. Ellis*, No. 2:19-CR-6,
  93 (BRM), 2020 WL 3962288 (D.N.J. July 13, 2020) ........................................ 38
*United States v. Escalante-Melgar*,
  No. CR 16-453 (CCC), 2020 WL 968091 (D.N.J. Feb. 28, 2020).......................... 8
*United States v. Farese*,
  No. CR 21-877 (KM), 2023 WL 6795083 (D.N.J. Oct. 12, 2023)........................ 38
*United States v. Fernandez*,
  837 F.2d 1031 (11th Cir. 1988) ............................................................. 15, 17, 20
*United States v. Frank*,
  354 F.3d 910 (8th Cir. 2004) ............................................................................ 18
*United States v. Givan*,
  320 F.3d 452 (3d Cir. 2003)............................................................................... 30
*United States v. Gorecki*,
  813 F.2d 40 (3d Cir. 1987)................................................................................. 24
*United States v. Grasso*,
  173 F. Supp. 2d 353 (E.D. Pa. 2001)................................................................... 8
*United States v. Green*,
  617 F.3d 223 (3d Cir. 2010)............................................................................... 26
*United States v. Haili*,
  260 F.2d 744 (9th Cir. 1958) ............................................................................ 21
*United States v. Jacobs*,
  44 F.3d 1219 (3d Cir. 1995)........................................................................ 24, 25
*United States v. Jemal*,
  26 F.3d 1267 (3d Cir. 1994)........................................................................ 32, 35
*United States v. Kemp*,
  500 F.3d 257 (3d Cir. 2007)............................................................................... 14
*United States v. Lacerda*,
  12-cr-303 NLH/AMD, 2013 WL 3177814, at *15 (D.N.J. June 19, 2013) ............ 7
*United States v. Lee*,
  573 F.3d 155 (3d Cir. 2009)............................................................................... 31

*United States v. Lewis*,
   438 F. App'x 145 (3d Cir. 2011) ........................................................................ 15

*United States v. Lore*,
   430 F.3d 190 (3d Cir. 2005)......................................................................... 24, 25

*United States v. Mariani*,
   90 F. Supp. 2d 574 (M.D. Pa. 2000) ..................................................................... 6

*United States v. McGlory*,
   968 F.2d 309 (3d Cir. 1992)................................................................................ 32

*United States v. Mink*,
   9 F.4th 590 (8th Cir. 2021) ............................................................................... 24

*United States v. Novak*,
   217 F.3d 566 (8th Cir. 2000) .................................................................... passim

*United States v. O'Leary*,
   739 F.2d 135 (3d Cir. 1984)................................................................................ 34

*United States v. Papia*,
   399 F. Supp. 1381 (E.D. Wis. 1975)..................................................................... 9

*United States v. Payne*,
   No. 2016-cr-46, 2017 WL 1305238 (D. Nev. Jan. 13, 2017) ............................... 18

*United States v. Pelullo*,
   399 F.3d 197 (3d Cir. 2005)......................................................................... 37, 38

*United States v. Peperno*,
   No. 3:CR-21-287, 2022 WL 2231599 (M.D. Pa. June 21, 2022)......................... 33

*United States v. Politi*,
   334 F. Supp. 1318 (S.D.N.Y. 1971) ...................................................................... 9

*United States v. Reicherter*,
   647 F.2d 397 (3d Cir. 1981)................................................................................ 24

*United States v. Repak*,
   852 F.3d 230 (3d Cir. 2017)................................................................................ 31

*United States v. Resendiz-Ponce*,
   549 U.S. 102 (2007) ........................................................................................... 13

*United States v. Rosa*,
   891 F.2d 1063 (3d Cir. 1989)................................................................................ 6

*United States v. Saada*,
   212 F.3d 210 (3d Cir. 2000)......................................................................... 33, 35

*United States v. Salzano*,
   No. 22CR690 (EP), 2024 WL 866885 (D.N.J. Feb. 26, 2024)...................... 29, 37

*United States v. Sampson*,
   980 F.2d 883 (3d Cir. 1992)................................................................................ 31

*United States v. Scarfo*,
   41 F.4th 136 (3d Cir. 2022) ............................................................................... 36

*United States v. Scarfo*,
   850 F.2d 1015 (3d Cir. 1988)............................................................................. 35

*United States v. Siegel*,
   536 F.3d 306 (4th Cir. 2008) ............................................................................. 29

v

*United States v. Skelos*,
  Crim. No. 15-317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ............................ 7
*United States v. Smith*,
  776 F.2d 1104 (3d Cir. 1985)............................................................................ 6, 8
*United States v. Sriyuth*,
  98 F.3d 739 (3d Cir. 1996)................................................................................ 35
*United States v. Starnes*,
  583 F.3d 196 (3d Cir. 2009) .............................................................................. 32
*United States v. Sussman*,
  709 F.3d 155 (3d Cir. 2013) .............................................................................. 18
*United States v. Urban*,
  404 F.3d 754 (3d Cir. 2005)........................................................................... 6, 7, 8
*United States v. Vega*,
  285 F.3d 256 (3d Cir. 2002) .............................................................................. 31
*United States v. Wabo*,
  290 F. Supp. 2d 486 (D.N.J. 2003) .................................................................... 8
*United States v. Weinstein*,
  658 F. App'x 57 (3d Cir. 2016) .......................................................................... 36
*United States v. Williams*,
  974 F.3d 320 (3d Cir. 2020)........................................................................ 26, 30
*United States v. Zolp*,
  659 F. Supp. 692 (D.N.J. 1987) .......................................................................... 6
*Zafiro v. United States*,
  506 U.S. 534 (1993) .......................................................................................... 23

**Statutes**

18 U.S.C. § 115.................................................................................................. 20
18 U.S.C. § 1503................................................................................... passim
18 U.S.C. § 1503(a) ........................................................................................... 15
18 U.S.C. § 3583................................................................................................ 22
18 U.S.C. § 3583(a) ........................................................................................... 21
18 U.S.C. § 3601................................................................................................ 22
18 U.S.C. § 3602......................................................................................... 16, 22
18 U.S.C. § 3603(2) ............................................................................... 16, 17, 22
18 U.S.C. 3583(e)(2) .......................................................................................... 21

**Rules**

Fed. R. Crim. P. 7(c)(1) ..................................................................................... 13
Fed. R.Crim. P. 14(a) ........................................................................................ 23
Fed. R. Crim. P. 35(b)(2)................................................................................... 21
Fed. R. Evid. 403............................................................................................... 31
Fed. R. Evid. 404(b) .................................................................................... 23, 26
Fed. R. Evid. 404(b)(1) ..................................................................................... 26

## PRELIMINARY STATEMENT

The Government respectfully submits this brief in opposition to the Omnibus pretrial motions filed by the defendant Eliyahu Weinstein, a/k/a "Mike Konig" ("Weinstein") and the motion for a bill of particulars filed by the defendant Aryeh "Ari" Bromberg ("Bromberg," with Weinstein, the "Defendants").[1] The Court should deny the Defendants' pretrial motions in their entirety.

Both Defendants seek but are not entitled to a bill of particulars in light of the highly detailed complaint and Indictment, the wealth of information available through discovery, and the Government's comprehensive production, months before trial, of law enforcement reports of witness interviews. Their motions amount to an improper request for a preview of the Government's trial strategy and should be denied.

The Court also should deny Weinstein's motion to dismiss Count Seven of the Indictment charging the Defendants with conspiracy to obstruct justice. Weinstein argues that because there was no violation proceeding pending when Weinstein and his co-conspirators were hiding Weinstein's assets from the United States Probation Office ("Probation"), Weinstein's supervised release term cannot be used as a predicate for charges under the obstruction statute, 18 U.S.C. § 1503 ("Section 1503"). But Weinstein ignores that, in addition to his term of supervised release, he was the subject of two restitution judgments requiring him to pay $230 million to his prior victims. These judgments were explicitly left in place by his commutation

---

[1] Bromberg joins all of Weinstein's motions.

1

order and can be used under well-established Third Circuit law as predicates for the Defendants' agreement to violate Section 1503.

Weinstein moves in the alternative to sever Count Seven (the obstruction conspiracy) from the fraud charges in Counts One to Six because he argues that his prior convictions are *only* admissible to prove the obstruction conspiracy, and not the fraud charges. But Weinstein side steps that concealing his true identity and prior fraud convictions was central to his most recent fraud charged in the Indictment. Weinstein's prior convictions are thus admissible as intrinsic to the fraud charges. Even if this evidence fell under Rule 404(b) (it doesn't), it would be admissible to prove, among other things, Weinstein and Bromberg's intent, knowledge, and lack of mistake regarding all of the crimes charged in the Indictment. Weinstein's severance motion is baseless and should be denied.

Finally, Weinstein moves for an order requiring the Government to specifically identify *Brady* material in the discovery already provided. But there is no obligation to do so, particularly here, where the Government has met and exceeded its obligations by producing Rule 16 discovery and Jencks Act materials (far earlier than required) in an organized and readily accessible format for the Defendants to search themselves.

## STATEMENT OF FACTS

Weinstein was previously convicted of two separate investment fraud schemes, the first of which he committed from 2004 through 2011, and the second of which he committed—while he was on pretrial release—from 2012 through 2013.

*See* Crim. No. 11-701 (MAS) ("Weinstein I"); Crim. No. 14-219 (MAS) ("Weinstein II"). Weinstein's first two investment fraud schemes collectively resulted in losses to investors of approximately $230 million. *See* Crim. No. 11-701, ECF. No. 203; Crim. No. 14-219, ECF No. 93. The Honorable Joel A. Pisano, U.S.D.J., sentenced him to 24 years in prison for those crimes, to be followed by a three-year term of supervised release. *Id.* Judge Pisano also ordered that he pay $230,406,799 in restitution to his victims. *Id.*

On January 19, 2021, less than 8 years into Weinstein's 24-year sentence, the President of the United States commuted his prison sentence to a period of time served, leaving intact the supervised release and restitution components. *See* Crim. No. 11-701, ECF Nos. 217, 219. The next day, Weinstein was released from custody and began serving his three-year term of supervised release under Probation's supervision.

Weinstein wasted no time in orchestrating yet another Ponzi scheme. Weinstein and Bromberg, with their his co-conspirators, including Joel Wittels, Shlomo Erez, Alaa Hattab, Christopher Anderson, and Richard Curry, bilked tens of millions of dollars from investors. *See* Indictment, Crim. No. 24-128 (MAS), ECF No. 85 (the "Indictment"), Count One. Two pairs of co-conspirators acted through two separate corporate entities. *Id.* at p. 4 ¶¶ 1(c)-(i). Wittels and Bromberg owned Optimus Investments Inc. ("Optimus"), which raised money from investors, purportedly to finance the purchase and sale of medical supplies and other goods. *Id.* at p. 4 ¶¶ 1(c), (e)-(f). Although not affiliated with Optimus on paper, Weinstein

directed Wittels and Bromberg where and how to move investor money. *See id.* And Anderson and Curry owned Tryon Management Group LLC ("Tryon"), which raised money from investors, purportedly to finance Optimus's transactions. *Id.* at p.4 ¶ 1(g). To convince people to give the companies money, Weinstein and co-conspirators: (a) actively concealed Weinstein's identity (he went by the alias "Mike Konig") and role in purported investments; (b) falsely claimed that the funds would be invested in lucrative deals involving, among other things, COVID-19 masks, scarce baby formula, and first-aid kits bound for Ukraine; and (c) operated a Ponzi-like scheme by using new investor money to pay off earlier investors. *Id.* at 6-14 ¶¶ 3-4.

Later in the conspiracy, as the tide rolled out and investors started asking questions, the Defendants and their co-conspirators agreed to provide false and misleading information to investors to continue to conceal Weinstein's identity and to prevent them from asking for their money back. *Id.* Ultimately, investors in Tryon and Optimus lost tens of millions of dollars.

On February 20, 2024, a grand jury sitting in Newark returned a seven count Indictment charging the Defendants with conspiracy to commit securities fraud (Count One); securities fraud (Count Two); conspiracy to commit wire fraud (Count Three); wire fraud (Counts Four through Six); and conspiracy to obstruct justice (Count Seven). Trial is scheduled to begin on November 12, 2024.

## ARGUMENT

**I.    THE COURT SHOULD DENY DEFENDANTS' MOTIONS FOR A BILL OF PARTICULARS BECAUSE THE DETAILED INDICTMENT AND FULSOME DISCOVERY PROVIDE THE DEFENDANTS WITH MORE THAN ENOUGH INFORMATION TO PREPARE THEIR DEFENSE AND AVOID UNFAIR SURPRISE.**

Bromberg seeks an order directing the Government to file a bill of particulars specifying: (1) whether the conspiracy and securities fraud charges include Bromberg interacting with investors directly, and if so, what conduct was involved; (2) a description of all misrepresentations predicating the conspiracy and security fraud charges; (3) the names of the companies anonymized in the Indictment; (4) the names of the anonymized victims in the Indictment and the names of all investor victims; (5) the names of all unnamed "others" and unnamed locations referenced in the Indictment; and (6) greater detail about when, what, and how Bromberg agreed to obstruct justice. Bromberg Br. at 2. Weinstein seeks a bill of particulars "specifying the security charged in Counts One and Two." Weinstein Br. at 1. Each of these requests seeks information far beyond the well-established purpose of a bill of particulars, and should be denied.

The detailed Indictment and criminal complaint, along with the extensive, well-organized, and easily searchable discovery—including the early production of substantial Jencks Act material—provide the Defendants with all the particulars they are entitled to.

5

### A. Applicable Legal Standards

A bill of particulars is required only when an indictment is too vague to permit the defendant to (a) understand the charges and prepare a defense, (b) avoid unfair surprise, and (c) assert a claim of double jeopardy where appropriate. *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005). "Only where an indictment fails to perform these functions, and thereby significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,] will we find that a bill of particulars should have been issued." *Id.* (cleaned up). As long as the indictment enables the defendant to understand the accusations against him and the central facts that the Government will present at trial, a bill of particulars is unwarranted. *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987).

Even when a bill of particulars may be warranted, "it is not intended to provide the defendant with the fruits of the government's investigation, but is instead intended to give the defendant the *minimum* amount of information necessary to permit the defendant to conduct his own defense." *United States v. Mariani*, 90 F. Supp. 2d 574, 590-91 (M.D. Pa. 2000) (Vanaskie, C.J.) (emphasis added) (citing *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985)). "A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant; or disclose its legal theory." *United States v. Bellomo*,

6

263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003). Thus, in fraud cases, a "request to compel the Government to identify any and all false and fraudulent statements made as part of the alleged criminal scheme is beyond the proper scope of a bill of particulars." *United States v. Lacerda*, 12-cr-303 NLH/AMD, 2013 WL 3177814, at *15 (D.N.J. June 19, 2013).

Furthermore, the Third Circuit has emphasized that a bill of particulars is unnecessary in those cases where, as here, the Government supplements a detailed charging document with substantial discovery. *Urban*, 404 F.3d at 772.

### B.  The Defendants Are Not Entitled To A Bill Of Particulars

Here, the 29-page Indictment provides a wealth of details. In addition to describing the fraud scheme generally (Ind. p. 1-3, 5-10), it provides details regarding entities and individuals involved (*id.* p.4 ¶¶1c-l), examples of specific "deals" used to solicit investor money in furtherance of the scheme (*id.* ¶¶4t-4ee), and numerous overt acts (*id.* ¶¶5a-5i). Similarly, with respect to the obstruction conspiracy, the Indictment includes several pages describing the scheme, its manner and means (*id.* ¶¶5a-5e), and numerous overt acts (*id.* p. 11-13 ¶¶6a-6e). The detailed Indictment was also preceded by a 20-page complaint.

In addition, discovery in this case has been extensive and "provided in an organized and comprehensible fashion." *United States v. Skelos*, Crim. No. 15-317, 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015). The Defendants have had substantially all of the discovery for some time, including, among other things, Optimus email accounts, extensive bank records, and thousands of pages of

electronic chat messages. In addition, Bromberg received a copy of a forensic image of his cell phone in December 2023. The Defendants also recently received early discovery of materials they are not yet entitled to, including Jencks Act material. The Defendants therefore have far more than "'that minimum amount of information necessary' for their 'own investigation' such that "there is no need to order the bill of particulars requested[.]" *United States v. Grasso*, 173 F. Supp. 2d 353, 367 (E.D. Pa. 2001) (quoting *Smith*, 776 F.2d at 1111); *see also Urban*, 404 F.3d at 772 ("access to discovery further weakens the case for a bill of particulars").

A bill of particulars is not only unnecessary, it may have a detrimental effect on the Government's proofs. That is because a bill of particulars "effectively narrows the government's case at trial in the same way as the formal charging document: 'there can be no variance between the notice given in a bill of particulars and the evidence at trial.'" *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 429 (3d Cir. 2016) (quoting *Smith*, 776 F.2d at 1111). As a result, district courts are understandably reluctant at the pretrial stage to "unduly freeze [the government] to its proofs at trial." *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980), *aff'd in part, rev'd in part on other grounds*, 688 F.2d 919 (3d Cir. 1982).

The Indictment, complaint, and extensive discovery here clearly "contain[] sufficient factual and legal information for the defense to prepare its case." *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003); *see also United States v. Coburn*, 439 F. Supp. 3d 361, 382 (D.N.J. 2020) (denying bill of particulars motion in conspiracy case based on voluminous discovery and speaking indictment); *United*

*States v. Escalante-Melgar*, No. CR 16-453 (CCC), 2020 WL 968091, at *7 (D.N.J. Feb. 28, 2020) (same based on "extensive discovery" and a detailed superseding indictment); *United States v. Atwell*, Crim. No. 13-560 (FLW), 2015 WL 2092687, at *5 (D.N.J. May 5, 2015) (same based on "discovery, combined with the sufficiency of the allegations contained in the Superseding Indictment").

### C. Bromberg's Specific Requests For Particulars Are Unnecessary

Although it is obvious that Bromberg's requests go beyond what is required to be disclosed in a bill of particulars, the Government responds below to each one in turn.

#### 1. Specific Communications With And Misrepresentations to Victims

Bromberg seeks greater specificity regarding his role in carrying out the manner and means of the conspiracy charged in Count One, including particulars about interactions with and misrepresentations to victim investors. Bromberg Br. at 5-6. The Government, however, is not obligated to reveal the precise means by which that conspiracy was carried out or its legal theory regarding each defendant's guilt. *United States v. Cafaro*, 480 F. Supp. 511, 517 (S.D.N.Y. 1979); *United States v. Papia*, 399 F. Supp. 1381, 1384 (E.D. Wis. 1975). In the same vein, the Government need not particularize the precise role played by each defendant in the formation or execution of a conspiracy. *Boffa*, 513 F. Supp. at 485; *see also United States v. Politi*, 334 F. Supp. 1318, 1321 (S.D.N.Y. 1971), *aff'd*, 516 F.2d 897 (2d Cir. 1975) (a request for specific involvement of each conspirator is "evidentiary" and granting such a request would "unduly limit" the government).

9

In *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975), the appellant claimed that he was prejudiced by the trial court's denial of his request for "a bill of particulars listing 'any other overt acts committed, setting forth when, where and how it was committed, which were not set forth in the indictment.'" *Id.* The Third Circuit affirmed the district court's ruling, finding that this request "was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars[.]" *Id.* So, too, here, the Indictment provides considerable detail regarding the alleged conspiracy and other charges. Combined with the substantial discovery in this case, Bromberg has obtained the particulars that he is entitled to.

### 2.  The Names of Anonymized Companies Is Moot

The Government has provided Bromberg with the names of "Company-1," "Company-2," and the other entity referenced in Count One of the Indictment at paragraph 5b. As a result, his request for this information (Bromberg Br. at 12) is moot.

### 3.  The Names Of Anonymized Victims And All Victim Investors

Bromberg seeks the identities the anonymized victims referenced in the Indictment and all other victim investors. Bromberg Br. at 13. However, "[t]here is no general requirement that the prosecution identify the victims of alleged wire or mail fraud in an indictment." *United States v. Devos Ltd.*, No. 14 CR 574, 2017 U.S. Dist. LEXIS 3744, *60 (E.D.Pa. Jan. 10, 2017) (denying bill of particulars for victim names), *aff'd in part, rev'd in part on other grounds,* 61 F.4th 95 (3d Cir. 2023);

*United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008) (denying bill of particulars for victim names and finding that "it is not essential that an indictment identify victims by their given names") (cleaned up). Here, pursuant to the protective order in this case, Bromberg has voluminous, unredacted discovery, including his communications about and with victims, and extensive bank records reflecting victim transactions. Bromberg was also recently provided with victim interview reports and supplemental materials identifying victims by name. In short, Bromberg has more than sufficient information to avoid unfair surprise regarding victim investors.

### 4. The Names Of Unindicted Coconspirators And Location Information

Bromberg also seeks the identities of unindicted coconspirators and the "locations where the overt acts of the conspiracy took place." Bromberg Br. at 15-16. But Bromberg is again attempting improperly to use a bill of particulars as a discovery tool. *See United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he Government is not required to furnish the name of all other co-conspirators in a bill of particulars."); *Devos Ltd.*, 2017 U.S. Dist. LEXIS 3744 at *66-67 (denying bill of particulars for names of unindicted co-conspirators where the indictment and discovery "provide[d] sufficient information to Defendants to allow Defendants to build their defense") *aff'd in part, rev'd in part on other grounds*, 50 F.4th 336 (3d Cir. 2022).

Indeed, the names and identities of Bromberg's main coconspirators are no surprise: Weinstein, Joel Wittels, Shlomo Erez, Alaa Hattab, Christopher Anderson,

11

and Richard Curry—all of whom, except for Weinstein, have pleaded guilty for their roles in the fraud. Likewise, the Indictment specifies locations where aspects of the fraud transpired: Branchburg, New Jersey, and Allentown, Pennsylvania. Ind. p. 16-17 ¶¶ 5d, 5f. That, coupled with the extensive discovery, provides Bromberg sufficient information about his coconspirators and relevant locations.

### 5.  Details About The Obstruction Conspiracy Charged In Count Seven

Bromberg seeks to require the Government to identify its evidence of Bromberg's knowledge of, and participation in, the conspiracy throughout obstruction conspiracy charged in Count Seven. Bromberg Br. at 17. But the Indictment already details the manner and means of that conspiracy and quotes recordings of Bromberg participating in it. The discovery includes those recordings.

### D.  Weinstein's Request For Particulars About Securities Is Also Unnecessary

For his part, Weinstein seeks particulars about securities relevant to Counts One and Two. Weinstein Br. at 4. But this information is readily discernable through the Indictment and the voluminous discovery that the Defendants possess. The Indictment details how the Defendants engaged in a securities fraud conspiracy and raised money from victim investors. Ind. p.7 ¶¶ 3d-3j. The Indictment also provides specific examples of investment contracts that constitute securities. *Id.* p. 10-11 ¶¶3s-3ee. The Government has also conferred with Weinstein's counsel on this issue and, as a courtesy, emailed counsel a list of Bates numbers corresponding

to examples of securities. Thus, Weinstein's claim that he has insufficient information about relevant securities is baseless.

*    *    *

In sum, the detailed Indictment and complaint, combined with voluminous discovery, provide the Defendants with more than adequate notice of the charges against them and enable them to defend against those charges at trial.

## II.   THE COURT SHOULD DENY WEINSTEIN'S MOTION TO DISMISS COUNT SEVEN OF THE INDICTMENT.

Weinstein seeks dismissal of Count Seven of the Indictment, which charges the Defendants with conspiracy to obstruct justice in violation of 18 U.S.C. § 1503 ("Section 1503"), because he argues that supervised release is not a "judicial proceeding" within the meaning of Section 1503. Weinstein Br. at 13-18. Weinstein's motion is meritless and should be denied.

### A.  The Legal Standard

An indictment must contain only a plain, concise, and definite written statement of the essential facts constituting the offense charged. Fed. R. Crim. P. 7(c)(1). "[T]he Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure. [D]etailed allegations . . . surely are not contemplated by [Rule 7(c)(1)]." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quotations and citations omitted). An indictment is sufficient, therefore, so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to

13

what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (cleaned up). Further, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution. *Id.* (cleaned up); *accord Hamling v. United States*, 418 U.S. 87, 117 (1974) (similar standard under Constitutional requirements).

In evaluating a motion to dismiss, the court must accept as true all factual allegations in the indictment. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). Dismissal under Rule 12(b)(3) "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000). "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011).

In order to prove a conspiracy to obstruct justice, the Government must establish: (1) that there was an agreement whose object was to obstruct justice; (2) that the defendant knowingly joined it; and (3) that at least one overt act was committed in furtherance of the object of the agreement. *United States v. Davis*, 183 F.3d 231, 243 (3d Cir. 1999). Section 1503 provides in pertinent part that:

> Whoever corruptly or by threats or force, or by any threatening . . . communication, endeavors to influence, intimidate, or impede any . . . officer in or of any court of the United States . . . in ***the discharge of his duty***, or corruptly or by threats or force, or by any threatening . . . communication, influences, obstructs, or impedes, or endeavors to

14

influence, obstruct, or impede, ***the due administration of justice***, shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a) (emphasis added).

The first clause—the "Discharge of Duty" clause—"proscribes persons from endeavoring to influence, intimidate, or impede . . . court officers in the discharge of their duties." *United States v. Aguilar*, 515 U.S. 593, 598 (1995). The second clause—the "Omnibus Clause"—"serves as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice." *Id.* In both clauses, "the term 'endeavor' . . . makes conduct punishable where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way." *Id.* at 601-02. Because "[t]he latter clause . . . is far more general in scope than the earlier[,]" the Omnibus Clause has an implicit "nexus requirement": the defendant's "act must have a relationship in time, causation, or logic with the judicial proceedings," and his "endeavor must have the natural and probable effect of interfering with the due administration of justice." *Id.*

The Third Circuit has explicitly left open the question of "whether the discharge-of-duty clause requires that there be a similar nexus or relationship with a judicial proceeding." *United States v. Lewis*, 438 F. App'x 145, 149 (3d Cir. 2011) (unpublished). Other circuits have suggested it does not. *See United States v. Novak*, 217 F.3d 566, 571-72 (8th Cir. 2000) ("[W]e question whether § 1503 imposes any requirement that there be a pending judicial proceeding.") (cleaned up); *United States v. Fernandez*, 837 F.2d 1031, 1034 (11th Cir. 1988) (stating in *dicta* there

was "no support for [the] argument that in order to prove a violation of section 1503" under the Discharge of Duty Clause for threatening an AUSA, "the government must establish that the attorney was engaged in the discharge of his duty in a pending judicial proceeding").

### B. Weinstein Ignores the Discharge of Duty Prong of the Obstruction Statute and that Restitution Judgments Are Pending Judicial Proceedings.

Here, Weinstein argues that Count Seven fails because supervised release is not a pending "judicial proceeding" within the meaning of Section 1503. Weinstein Br. at 16. His argument is premised on his claim that the "Indictment's sole obstruction allegations relate to alleged violations of Mr. Weinstein's conditions of supervised release." Weinstein Br. at 16. This is wrong for at least two independent reasons.

*First*, Weinstein ignores that the object of the conspiracy charged in Count Seven includes *both* the violation of the Omnibus Clause *and* the Discharge of Duty prong of Section 1503. With respect to the latter prong, Weinstein does not dispute, nor could he, that his Probation officer was appointed by and acted under the direction of this Court. *See* 18 U.S.C. § 3602. Nor that it was the job of his Probation officer to supervise him and periodically report Weinstein's "conduct and condition to the sentencing court." 18 U.S.C. § 3603(2). The Indictment alleges that Weinstein and his co-conspirator's impeded his Probation officer's ability to supervise him by actively concealing Weinstein's identity and business activities. Ind. p. 24-25 ¶ 5. This obstruction caused Weinstein's Probation's officer to, among other things,

16

unknowingly provide false information to this Court, including a December 15, 2022 report that Weinstein was "compl[ying] with [Probation's] efforts to verify the legitimacy of his income and nature of employment." *Id.* Because the Indictment adequately alleges that Weinstein and his co-conspirators conspired to impede the discharge of his Probation officer's duty under Section 1503—an aspect of Section 1503 Weinstein entirely ignores—his motion should be denied. *See Novak*, 217 F.3d at 571 (submitting false reports to Probation violates Section 1503); *Fernandez*, 837 F.2d at 1034 (threats to a prosecutor made after sentencing were sufficient to sustain a conviction under the Discharge of Duty prong of Section 1503).

*Second,* Weinstein also fails to mention, much less address, that the Indictment alleges that Weinstein obstructed *both* Probation's lawful function *and* the restitution judgments imposed in Weinstein I and II, which were left in place by the President's Commutation Order. *See* Ind. p.24-25 ¶ 5; *see also* 11-CR-701, ECF No. 217-1. This, too, is fatal to his motion.

The judgments from Weinstein I and II required Weinstein to pay $230 million to the prior victims of his frauds and to "notify the court and the United States Attorney of any material change in [his] economic circumstances." Ind. p. 25 ¶5c. The Indictment alleges that Weinstein, Bromberg, and others agreed to thwart efforts by the Court and the United States Attorney to collect restitution and have an accurate picture of his economic circumstances by "hiding and diverting funds and assets that should have gone towards restitution." *Id.* p. 23-25 ¶¶ 4, 5c. Even assuming that supervised release is not by itself a judicial proceeding (it is for

17

reasons discussed below), the restitution judgments, which remain in place today and are unpaid, are pending judicial proceedings within the meaning of Section 1503.

The Third Circuit decision in *United States v. Sussman*, 709 F.3d 155 (3d Cir. 2013)—which Weinstein does not even cite let alone distinguish—is squarely on point. There, the court found that a final order and injunction requiring the defendant to deliver gold coins to the Federal Trade Commission was a "judicial proceeding" within the meaning of Section 1503. *Id.* at 170. It further found that evidence that the defendant removed gold coins from a bank, rather than turn them over to the government, was sufficient to convict the defendant under Section 1503 for interfering with the "due administration of justice." *Id.* at 168.

In so holding, the Third Circuit in *Sussman* cited with approval *United States v. Frank*, 354 F.3d 910, 918 (8th Cir. 2004), a case in which the Eighth Circuit affirmed the application of Section 1503 to defendants who tried to hide assets to prevent the government from collecting a fine and restitution payments stemming from one of the defendant's convictions. *See also United States v. Payne*, No. 2016-cr-46, 2017 WL 1305238, at *8 (D. Nev. Jan. 13, 2017), *report and recommendation adopted*, No. 2:16-CR-46-GMN-PAL, 2017 WL 1366671 (D. Nev. Feb. 10, 2017) ("The conduct charged in the superseding indictment sufficiently pleads that the defendants obstructed justice by engaging in conduct to interfere with and thwart enforcement of multiple court orders and injunctions over which this court had continuing jurisdiction.").

18

Here, Weinstein was the subject of two restitution judgments against him requiring him to pay $230 million to his prior victims. These judgments were explicitly left in place by his commutation order. *See* Ind. p. 24-26 ¶¶ 4, 5c. Consequently, just like in *Sussman* and *Frank*, the judgments were a sufficient predicate for the Defendants' violations of the Omnibus Clause of Section 1503.

### C. The Term of Supervised Release Was Itself A Pending Proceeding.

Weinstein argues that because there was no violation proceeding pending when he and his co-conspirators were hiding Weinstein's assets from Probation, Weinstein's supervised release term cannot be used as a predicate for charges under Section 1503. Weinstein Br. at 16-18. This, too, is wrong.

The Eighth Circuit in *United States v. Novak* rejected Weinstein's argument that "misconduct . . . during a term of supervised release[] may not be reached by § 1503 because there was no 'pending judicial proceeding' when the misconduct occurred." 217 F.3d 566, 571 (8th Cir. 2000). *Novak* affirmed a defendant's conviction on multiple counts of "violating § 1503's broadly-worded omnibus clause" that were based upon his "submit[ting] false reports to the USPO." *Id.* The Eighth Circuit saw "nothing on the face of § 1503 . . . precluding its use in targeting those who make knowing and fraudulent misrepresentations to the USPO in violation of a court order during a period of supervised release." *Id.* The *Novak* court added that although *Aguilar* "required some 'nexus' between the misconduct and the administration of justice," there was "an obvious and overwhelming nexus in time, causation, and logic between [the defendant]'s willful and repeated violations of the

lawful conditions of his supervised release and the sentencing proceeding imposing those conditions in the first place." *Id.* at 571 n.11. In any event, the court found that the "misconduct occurred while a judicial proceeding was 'pending' because the relevant conduct" occurred within the time period for filing a Rule 35 motion for reduction of sentence. *Id.* at 572-73.

Likewise, in *United States v. Fernandez*, the Eleventh Circuit affirmed a defendant's conviction under Section 1503's Discharge of Duty clause that was based upon his threats to the AUSA who had just handled his brother's sentencing hearing that "[y]ou better watch your back." 837 F.2d at 1032-34. Although "neither the legislative history nor case law under" Section 1503 offered "any guidance on the meaning of the phrase 'discharge of his duty,'" the Eleventh Circuit suggested that phrase was akin to whether the officer was "acting within scope of what he is employed to do," analogizing to "cases decided under" 18 U.S.C. § 115, which proscribed "assaulting a federal officer engaged in the performance of his official duty." *Id.* In any event, because the defendant's brother "still had time to file a notice of appeal and a motion to reduce his sentence," his case was still "pending" when the defendant "threatened" the AUSA. *Id.*

Following *Novak*'s and *Fernandez*'s logic, Weinstein's case had been "pending" all along for purposes of § 1503. Weinstein had already completed 11 months of a three-year term of supervised release when he orchestrated a conspiracy to obstruct justice. While under supervised release, Weinstein could have petitioned Your Honor to "modify" or "reduce" the conditions of supervised release,

at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. 3583(e)(2). Moreover, although Weinstein's time to appeal his conviction and sentence had long since expired, Rule 35(b) still permitted the Government to move to reduce his sentence for substantial assistance if certain circumstances were met. Fed. R. Crim. P. 35(b)(2). Such a motion would have permitted Your Honor to reduce Weinstein's term of supervised release, which was, of course, "part of the sentence." 18 U.S.C. § 3583(a).

In his motion, Weinstein relies chiefly on *United States v. Davis*, 183 F.3d 231, 239 (3d Cir. 1999). There, in *dicta*, the Third Circuit suggested that "probation supervised by court-appointed officers does not constitute a pending proceeding." *U.S. v. Davis*, 183 F.3d 231, 239 (3d Cir.), *amended*, 197 F.3d 662 (3d Cir. 1999).[2] But *Davis* confronted an entirely different issue: whether "a wiretap" was "a 'pending judicial proceeding' within the meaning of" Section 1503's Omnibus Clause. 183 F.3d at 239. *Davis* held that it was not, because "a wiretap order is an investigative method used by the executive branch, not an element of the judicial process," and that therefore "§ 1503 does not prohibit 'wiretap obstruction[.]'" 183 F.3d at 239-240. Here, in contrast, supervised release is "an element of the judicial process":

---

[2] *United States v. Haili*, 260 F.2d 744 (9th Cir. 1958), which Weinstein also cites is not to the contrary. *Haili* overturned a conviction under Section 1503's Omnibus Clause where the evidence showed only that the defendant had "associate[d] with" a probationer "when she was prohibited from having anything to do with him." 260 F.2d at 745. Unlike here, there were no allegations that the defendant in *Haili* orchestrated a conspiracy to hide assets and the defendant's business activities from Probation, going far beyond minor violations of supervised release. *Id.* at 745.

- only an Article III judge can impose or revoke it, 18 U.S.C. § 3583;

- a defendant placed on it must "be supervised by a probation officer," 18 U.S.C. § 3601, who is appointed by and acts "under the direction of" the district court, 18 U.S.C. § 3602; and

- the probation officer must "report" the defendant's "conduct and condition to the sentencing court," 18 U.S.C. § 3603(2).

Moreover, the Indictment includes quotes from calls and meetings with his co-conspirators during the period of the conspiracy in which Weinstein repeatedly acknowledged the pending nature of his supervised release and his efforts to obstruct it. For example:

- During an April 26, 2023 phone call with a coconspirator, Weinstein stated "Any financial move I make—anything—I have to report. Anything that's in the past doesn't belong to me if I didn't notify them or they don't know about it. What more has to be said?";

- Later during the same call, Weinstein stated, "So now my goal is to cash out something and then have to not notify anybody 'cuz it's after my timing that I have to notify anybody";

- During an August 26, 2022 meeting, speaking to Bromberg and then addressing the other coconspirators at the meeting, Weinstein said, "You've [Bromberg] seen my [bank] account? Believe me, just let me get off Probation guys"; and

- During the same meeting, Weinstein said, "What I say to you is please keep it discreet in this room, so I can help you—help you, help yourselves, because one violation is problematic."

As these recordings make plain, even assuming that *Aguilar* "required some 'nexus' between the misconduct and the administration of justice," there was "an obvious and overwhelming nexus in time, causation, and logic" between Weinstein's willful and concerted efforts to hide and lie to Probation, and his term of supervised release. *Novak*, 217 F.3d at 571 n. 11. Because his term of supervised release was,

like the restitution judgments, a pending proceeding under Section 1503, Weinstein's motion to dismiss Count Seven should be denied.

## III. WEINSTEIN'S MOTION TO SEVER COUNT SEVEN OF THE INDICTMENT IS MERITLESS.

In the alternative, Weinstein moves pursuant to Federal Rule of Criminal Procedure 14(a) to sever Count Seven from the Indictment because he argues that his prior convictions are inadmissible "at a trial addressing solely the investor fraud charges in Counts One through Six." Weinstein Br. at 22. Weinstein, however, ignores that concealing his criminal past from investors was a pillar of his fraud and intrinsic to Counts One through Six in the Indictment, or in the alternative, is admissible for non-propensity purposes under Fed. R. Evid. 404(b). His motion for severance, therefore, fails.

### A. Severance of Charges Should be Denied Because Evidence of Weinstein's Prior Convictions are Admissible as to Both Charges

Rule 14 permits severing otherwise properly joined charges "only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Even if such a serious risk exists, severance is not mandated. Instead, Rule 14(a) "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39 (citations omitted). A defendant "seeking a severance bear[s] a heavy burden and must demonstrate not only that the court would abuse its discretion if it denied severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly

23

unfair trial." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (cleaned up). "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981).

The Third Circuit has suggested in *dicta* that "if a defendant is charged with multiple offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges." *United States v. Jacobs*, 44 F.3d 1219, 1221 (3d Cir. 1995). That approach has not been adopted as the law of this or any other Circuit. To the contrary, if evidence relating to one set of charges would "probably be admissible at a separate trial" of the other set of charges, severance is not required. *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987) (district court did not abuse its discretion denying motion to sever drug counts from weapons charges because the evidence of defendants' possession of drugs "could indicate defendant's motive for not registering the firearm and, thus, be relevant evidence at a separate trial on the weapons charge"); *see also United States v. Mink*, 9 F.4th 590, 604 (8th Cir. 2021) ("Here, [defendant] cannot overcome the strong presumption against severance because evidence of each charge would be admissible against him in a separate trial for another charge.").

But even applying the *Jacobs* dictum literally, severance still would be unwarranted here. Weinstein's fraud scheme could not succeed unless he concealed from his unwitting investors his true identity: a notorious fraudster who had been

24

convicted of defrauding many victims, including members of his own religious community, had caused those victims $230 million in losses, had continued committing fraud even after being charged in *Weinstein I*, and had rewarded an extraordinary grant of clemency by committing yet more fraud. Thus, Weinstein's convictions in *Weinstein I* and *II*, his conditions of supervised release under the judgments in those cases, and his restitution obligations under those same judgments **all** are "independently admissible with respect to the other charges" now pending against him. *Jacobs*, 44 F.3d at 1221.

### B. Weinstein's Prior Convictions Are Intrinsic to Counts One through Six of the Indictment

Here, Weinstein asserts that severance is warranted because he claims the Government cannot meet its "burden to demonstrate that evidence of Mr. Weinstein's prior convictions would be admissible at a trial addressing solely the investor fraud charges in Counts One through Six." Weinstein Br. at 22. He is wrong.

As an initial matter, Weinstein, not the Government, bears the "heavy burden" of demonstrating that "the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." *Lore*, 430 F.3d at 205. Weinstein cannot meet that burden because, as the Indictment makes clear, Weinstein's prior convictions and his concealment of them are intrinsic to the fraud charged in Counts One through Six of the Indictment. Weinstein addressed none of this in his papers. No wonder: it is fatal to his motion.

"Intrinsic evidence need not be analyzed under Rule 404(b) because it is not '[e]vidence of any crime, wrong, or other act,' Fed. R. Evid. 404(b)(1), but rather 'part and parcel of the charged offense.'" *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (quoting *United States v. Green*, 617 F.3d 223, 245 (3d Cir. 2010)). Evidence that is "intrinsic" does not fall within Rule 404(b). *Green*, 617 F.3d at 245. An act is considered "intrinsic," and thus not subject to Rule 404(b), in two circumstances. First, if it "directly proves" the charged offense. *Id.* at 248. That is, "if uncharged misconduct directly proves the charged offense, it is not evidence of some other crime," and therefore outside the scope of Rule 404(b). *Id.* at 249 (cleaned up); *see United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016). Second, "'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Green*, 617 F.3d at 249 (*quoting United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). These parameters "suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense." *Williams*, 974 F.3d at 357. "[W]here a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives." *Id.* (citing cases).

Here, evidence of Weinstein's prior convictions directly proves the fraud conspiracy charges in Counts One (securities fraud conspiracy) and Three (wire fraud conspiracy) and the fraud charges in Counts Two (securities fraud) and

Counts Four through Six (wire fraud). That is, because to prove all of these fraud charges, the Government must and will show that Weinstein and his coconspirators made or caused to be made false or misleading statements to Optimus investors. *See* 3rd Circuit Model Jury Instructions, § 6.18.1343 (first element of wire fraud requires the Government to prove the Defendant devised a scheme to defraud or obtain money or property by "materially false or fraudulent pretenses, representations, or promises"); 3 Modern Federal Jury Instructions-Criminal ¶ 57.21 (2023) (Government can prove first element of securities fraud by showing the defendant made an untrue statement of material fact, or omitted to state a material fact that made what was said, under the circumstances, misleading).

One of the many ways in which Weinstein and his coconspirators lied to investors was through false and misleading statements and omissions about his identity and prior convictions. Specifically, the Indictment alleges that since at least December 2021, Weinstein operated Optimus in the shadows and took steps to actively conceal his involvement in the company from investors including by using an alias, "Mike Konig," when communicating with them. Ind. p. 6-7 ¶ 4a. Bromberg and Wittels, who were the nominal owners of Optimus, acted as a front for Weinstein so that investors would not find out about him, by putting their names on corporate documents, checks, corporate bank accounts, and investor documents. *Id.* p. 6 ¶ 4b. In a recorded meeting on August 31, 2022, Weinstein and Bromberg later acknowledged that concealing Weinstein's identity was an essential part of their investment fraud scheme:

27

> **Weinstein**: There's another problem. We collectively did not tell everyone who I was, no one would ever give you a penny if they knew who I was . . . because I have a bad reputation.
>
> **Bromberg**: Correct.

*Id.* p. 17 ¶ 5g. Moreover, every investor will testify at trial that had they known who Weinstein was and what role he played in Optimus, they never would have invested. In short, Weinstein cannot escape the reality that hiding his prior convictions from investors was a critical part of his fraud and the conspiracies charged in the Indictment. Because this evidence "directly proves the charged crime," *Bailey*, 840 F.3d at 128, it is intrinsic to all of the fraud crimes charged in the Indictment.

Weinstein's prior convictions are also intrinsic to the fraud charges because they relate to contemporaneous acts that the Indictment alleges furthered the conspiracy to defraud investors. *Green*, 617 F.3d at 248. After all, Weinstein was on supervised release and the subject of two prior restitution judgments when he, Bromberg, and Wittels started Optimus. Ind. p.1-2 ¶1. The overt acts Weinstein, Bromberg, and others took to obstruct the supervised release conditions and the restitution judgments associated with his prior convictions through hiding Weinstein's investment activities, also furthered the conspiracy to hide Weinstein's involvement in Optimus investors. This is made plain in the recordings and messages extensively quoted in the Indictment. For example, during the same August 26, 2022 meeting where Weinstein confessed to hiding his identity from investors, Weinstein also admitted to hiding assets from Probation, "I just told you something that no one in the world knows because I hid money. Get it?" *Id.* p. 26

¶ 6(b); *see also id.* p. 7 ¶4d. Thus, the meetings and communications which form the backbone of the obstruction conspiracy and the fraud conspiracies overlap, and the jury would be unable to understand this evidence in both trials without knowing what Weinstein and his co-conspirators were trying to hide.

Because Weinstein's prior convictions are intrinsic to the fraud charges in the Indictment and admissible for that purpose, his attempt to sever Count Seven from the Counts One through Six fails. *See, e.g.*, *United States v. Salzano*, No. 22CR690 (EP), 2024 WL 866885, at *6 (D.N.J. Feb. 26, 2024) (admitting evidence of defendant's prior fraud convictions as intrinsic to securities and wire fraud charges); *United States v. Bard*, No. 1:12-CR-181, 2013 WL 3157551, at *5-6 (M.D. Pa. June 20, 2013) (permitting as intrinsic evidence of FINRA investigation, bankruptcy petition, and past financial straits where defendant was charged with a scheme to represent himself as an experienced and trustworthy financial advisor, while choosing to withhold information regarding his personal bankruptcy and a FINRA investigation into his prior misconduct); *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (evidence of prior identity theft and fraud admissible as "intrinsic" to charged offenses of fraud, identity theft, and murder, and reversing district court's pretrial ruling to the contrary).

## C. Weinstein's Prior Convictions Are Alternatively Admissible Under Rule 404(b)

In support of his severance motion, Weinstein claims that admitting his prior convictions in a second trial on his fraud offenses would run afoul of Rule 404(b). Weinstein Br. at 22. Of course, Weinstein ignores that, as described above, his prior

convictions are intrinsic to fraud charges, and therefore, Rule 404(b) has no application here. *See Williams*, 974 F.3d at 357. But even if his prior convictions were not intrinsic to the fraud charges (they are), they would still be admissible under Rule 404(b) for a host of proper non-propensity purposes.

### 1. The Legal Standard

The admission of relevant uncharged acts that are not "intrinsic" to the charged offenses is governed by Rule 404(b). Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged offense.[3] The proponent of the evidence bears the burden of establishing that the evidence is admissible. *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *Green*, 617 F.3d at 249 (cleaned up).

Courts typically consider the first and second factors—the purpose for admitting the "other act" evidence and its relevance—together. *See, e.g., United*

---

[3] Federal Rule of Evidence 404(b) provides:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003); *United States v. Vega*, 285 F.3d 256, 261-62 (3d Cir. 2002). The Third Circuit favors the admission of Rule 404(b) evidence "when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense." *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (citation omitted); *see also United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) ("Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted.").

To be clear, the "parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction." *United States v. Lee*, 573 F.3d 155, 166 (3d Cir. 2009) (quoting *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992)). When evidence is relevant to a material issue in the case other than the defendant's character, the purpose for admitting it is proper. *See Green*, 617 F.3d at 250.

If the extrinsic evidence is probative of a non-propensity purpose, and if that purpose is logically relevant to a fact of consequence to the case, the evidence should be admitted unless, under Rule 403, "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also Repak*, 852 F.3d at 246 (quoting *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014) ("Fed. R. Evid. 403 'creates a presumption of admissibility.'"). "'[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable.'" *Claxton*, 766 F.3d

at 302 (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)) (alterations in original).

Only "unfair prejudice is what Rule 403 is meant to guard against, that is, prejudice 'based on something other than [the evidence's] persuasive weight.'" *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (quoting *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003)) (emphasis in original); *see also United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (reasoning that if relevant to a non-propensity purpose, evidence should be excluded only "if its probative value is substantially outweighed by *unfair prejudice*, not just prejudice") (emphasis in original). Unfair prejudice arises if the evidence is likely to "cause the jury to base its decision on something other than the established propositions in this case." *United States v. McGlory*, 968 F.2d 309, 339 (3d Cir. 1992) (quotation omitted).

## 2. Weinstein's Prior Convictions Are Admissible under Rule 404(b) for Non-Propensity Purposes

Although Weinstein concedes—as he must—that his prior convictions are admissible and intrinsic to the Count Seven, Weinstein speculates in his motion that the same prior convictions would not be admissible for *any* non-propensity purpose to prove the fraud charges in this case. Weinstein Br. at 22-25. Not so.

In fraud cases, courts have routinely recognized several relevant, non-propensity purposes for admitting evidence of a defendant's prior uncharged fraudulent conduct. For example, in *United States v. Jemal*, 26 F.3d 1267, 1276 (3d Cir. 1994), the Third Circuit found that the defendant's prior involvement in an

insurance fraud scheme was properly admitted as Rule 404(b) evidence because evidence of the defendant's past frauds was "highly relevant" to whether he knowingly and intentionally engaged in the charged mail fraud scheme. Similarly, in *United States v. Saada*, 212 F.3d 210, 223-24 (3d Cir. 2000), the Third Circuit upheld the admission as Rule 404(b) evidence that a defendant charged with insurance fraud had previously committed a similar uncharged insurance fraud with the same co-conspirators, because it showed the defendant's intent to defraud, knowledge of the fraudulent nature of the scheme, financial motive to commit insurance fraud, and the unlawful nature of his prior relationship with his co-conspirators. The court found the danger of unfair prejudice to be slight and cured by a limiting instruction. *Id.* at 224; *see also United States v. Peperno*, No. 3:CR-21-287, 2022 WL 2231599, at *1-*8 (M.D. Pa. June 21, 2022) (denying a motion by a defendant charged with bribery offenses to exclude evidence of a sixteen-year-old mail fraud conviction and restitution obligation, finding the evidence to be intrinsic to some of the charges and 404(b) as to the money laundering charges).

The same is true here. Weinstein's prior convictions are probative of Weinstein's motive, intent, knowledge, plan, identity, and absence of mistake with respect to hiding his true role at Optimus from investors, using an alias, and utilizing Wittels and Bromberg as a front to raise money from investors. For example, without knowing about his prior convictions, the jury will simply be unable to understand why Weinstein and his co-conspirators went to great lengths to hide his true identity and role at Optimus from investors. Proof of his prior

convictions is not only critical background evidence in understanding the conspiracy

to hide Weinstein's name but also helps to explain the relationship between

Weinstein and his co-conspirators, including Bromberg who knew Weinstein before

he went to prison. These are all permissible non-propensity purposes under Rule

404(b). *See Green*, 617 F.3d at 247 ("[A]llowing the jury to understand the

circumstances surrounding the charged crime—completing the story—is a proper,

non-propensity purpose under Rule 404(b)."); *United States v. Butch*, 256 F.3d 171

(3d Cir. 2001) (evidence of other crimes admissible to provide "necessary

background information, to show an ongoing relationship between [the defendant

and a co-conspirator], and to help the jury understand the co-conspirator's role in

the scheme"); *United States v. O'Leary*, 739 F.2d 135, 136 (3d Cir. 1984) (evidence of

other crimes admissible to provide background information, establish parties'

familiarity with one another, and prove their concert of action), *cert. denied*, 469

U.S. 1107 (1985).

### 3.  Weinstein's Prior Convictions Are Admissible under Rule 403

Ignoring the overwhelming probative value of Weinstein's prior convictions to

the fraud charges, Weinstein claims that his prior convictions would still be

excluded under Rule 403 because of the "glaring prejudice to [his] right to a fair

trial on the fraud counts if his prior convictions were introduced at trial." Weinstein

Br. at 24.

But Weinstein shows nothing approaching *unfair* prejudice, let alone

anything that would substantially outweigh the clear probative of value his prior

convictions to proving the fraud he and his co-conspirators perpetrated on investors by lying about and concealing his identity from them.

To be sure, Weinstein's prior fraud convictions show that he previously defrauded investors, but they are no more inflammatory or offensive, and arguably less so, than the fraud scheme charged in the Indictment. The Third Circuit has blessed the introduction of far more potentially prejudicial evidence—including other acts evidence—than that involved here. *See, e.g., Green*, 617 F.3d at 252 (affirming admissibility of evidence that defendant charged with drug offense had previously made efforts to acquire dynamite to kill an undercover officer because it helped explain the conversations between the defendant and cooperator and explain the cooperator's motives); *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (evidence of uncharged rape); *United States v. Scarfo,* 850 F.2d 1015, 1020 (3d Cir. 1988) (evidence of uncharged murders). Indeed, the Third Circuit has upheld the introduction of 404(b) evidence that was similar to Weinstein's prior fraud convictions as not unfairly prejudicial. *See Jemal*, 26 F.3d at 1276 (3d Cir. 1994) (finding admission of evidence of prior fraud and "bust-out" schemes properly admitted in mail fraud and conspiracy involving separate "bust-out" fraud scheme to show knowledge and intent); *Saada,* 212 F.3d at 223-24 (upholding admission of prior insurance fraud conspiracy because there were "non-propensity bases" for admission under Rule 404(b)).

Moreover, Weinstein offers no reason for why the risk of *unfair* prejudice—to the extent there is any—could not be ameliorated by an appropriate limiting

35

instruction, which the Third Circuit has repeatedly approved in similar circumstances. *See, e.g., United States v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022), *cert. denied sub nom. Pelullo v. United States*, 143 S. Ct. 1044, 215 L. Ed. 2d 201 (2023).

Weinstein also argues that the introduction of his prior convictions would risk a minitrial under Rule 403 over the circumstances leading to those convictions and sentences. Weinstein Br. at 25. As support for this, Weinstein recapitulates a number of claims he made in a since withdrawn habeas petition that Judge Pisano participated in plea negotiations. *See id.* at 25-26. Never mind that Weinstein is rehashing the same claims that he raised on direct appeal of his convictions, which the Third Circuit summarily rejected, finding, among other things, that Weinstein provided "no credible evidence establishing that Judge Pisano violated Rule 11." *United States v. Weinstein*, 658 F. App'x 57 (3d Cir. 2016) (non-precedential).[4]

But, even assuming the veracity of Weinstein's specious claims, it is undisputed that Weinstein pled guilty *twice* to committing fraud, after he swore each time he was doing so knowingly and voluntarily. *See* Weinstein I, D.E. 72; Weinstein II, D.E. 72. Weinstein's attempts to "contextualize" the circumstances leading to his guilty pleas are irrelevant to the convictions themselves. Nor do they

---

[4] At the appropriate time, the Government will move *in limine* to preclude Weinstein from introducing evidence or making arguments at trial challenging the validity of his prior fraud convictions. Among other reasons, the collateral bar doctrine prohibits him from doing so. In addition, his attempts to relitigate habeas claims that he withdrew and that the Third Circuit rejected in his direct appeal should be precluded under Rules 401, 402, and 403 because, as noted above, those attempts are irrelevant to any fact of consequence to this litigation.

have any legitimate bearing on any issue material to this case. And even if Weinstein's claims were marginally relevant, they would go to the weight of this evidence, not its obvious admissibility. *See Bergrin*, 682 F.3d at 279 ("It must always be remembered that unfair prejudice is what Rule 403 is meant to guard against, that is, prejudice based on something other than the evidence's persuasive weight.") (cleaned up); *Salzano*, 2024 WL 866885 at *6 (overruling defendant's objections to the admission of prior fraud convictions because "these arguments challenge the evidence's weight, not its admissibility").

*    *    *    *    *

Because Weinstein's prior convictions are plainly admissible and intrinsic to all of the crimes charged in the Indictment, Weinstein cannot meet his heavy burden of showing that that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial. His motion in the alternative to sever Count Seven should be denied.

## III.  WEINSTEIN'S MOTION FOR SUPPLEMENTAL *BRADY* DISCLOSURES SHOULD BE DENIED

Finally, Weinstein asks the Court to order the Government to specifically identify the *Brady* material within already produced material. Weinstein Br. at 30. Weinstein's motion is meritless and contrary to well-established Third Circuit law.

*United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005)—another binding case that Weinstein does not cite let alone address—is squarely on point. There, defense counsel claimed that the Government violated its *Brady* obligations by making a warehouse of documents available to the defense. *Id.* at 197, n. 15. The Third

37

Circuit squarely rejected that claim, finding that "*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." *Id.* at 197. *Brady* did not obligate the government to do anything other than "make the warehouse documents available to the defense, *without specifying any particular documents that were helpful to the defense*." *Id.* (emphasis added). Rather, the court found that "the burden is on the defendant to exercise reasonable diligence." *Id.; see also United States v. Cocchiola*, 358 F. App'x 376, 381 (3d Cir. 2009) (unpublished) ("[T]he requirement that the Government disclose material evidence in its possession is fundamentally different from placing an affirmative obligation on prosecutors to ferret out any potentially exculpatory evidence."); *United States v. Farese*, No. CR 21-877 (KM), 2023 WL 6795083, at *2 (D.N.J. Oct. 12, 2023) ("[A]bsent [] bad faith or concealment, there is no duty to help the defense identify and analyze which items may be considered exculpatory."); *United States v. Ellis*, No. 2:19-CR-693 (BRM), 2020 WL 3962288, at *2 (D.N.J. July 13, 2020) ("The Third Circuit has emphasized a timely disclosure obligation with respect to *Brady* material and has not placed a further duty on prosecutors to label that material for the defense.").

Here, the Government has done far more than merely make a "warehouse" of documents available to the defense. *Pelullo*, 399 F.3d at 197. Rather, the Government has, in compliance with the scheduling order, produced documents in

individual, separate folders identifying the specific source of the records; identified records using a Bates-stamp system; provided electronic records in a searchable format, such as PDFs, or in files that are loadable into a discovery platform; and produced hundreds of 302s organized alphabetically organized, with notes of the 302s and documents referenced in them—far more than is at this stage of the proceeding. The Government has also made representatives of its e-litigation team available to the defense to discuss issues with processing the productions, and produced spreadsheets to the defense to ensure they could properly load the productions into their databases. In short, the Government has gone above and beyond at every step of the discovery process to ensure that the Defendants can access discovery and easily and quickly search it for whatever they deem material to their defense. Weinsteins' motion should be denied.

## CONCLUSION

For the reasons stated above, the Court should deny the Defendants' motions in their entirety.

Respectfully submitted,

PHILIP R. SELLINGER
UNITED STATES ATTORNEY

By:    *s/Jonathan Fayer*
Jonathan Fayer
Carolyn Silane
Mark J. Pesce
Assistant U.S. Attorneys