JF/CS/MP 2023R00638

FILED

OCT 10 2024

AT 8:30 ___ 4:00 P M
CLERK, U.S. DISTRICT COURT - DNJ

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| | : | |
| | : | Criminal No. 24-128 |
| v. | : | |
| | : | Count One |
| | : | 18 U.S.C. § 371 |
| ELIYAHU ("ELI") WEINSTEIN, | : | |
| a/k/a "Mike Konig," and | : | Count Two |
| ARYEH ("ARI") BROMBERG | : | 15 U.S.C. §§ 78j(b), 78ff |
| | : | 17 C.F.R. § 240.10b-5 |
| | : | 18 U.S.C. § 2 |
| | : | |
| | : | Count Three |
| | : | 18 U.S.C. § 1349 |
| | : | |
| | : | Counts Four through Six |
| | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 2 |
| | : | |
| | : | Count Seven |
| | : | 18 U.S.C. § 1956(h) |
| | : | |
| | : | Count Eight |
| | : | 18 U.S.C. § 1957(a) |
| | : | |
| | : | Count Nine |
| | : | 18 U.S.C. § 371 |
| | : | |
| | : | Counts Ten through Thirteen |
| | : | 18 U.S.C. § 1001 |
| | : | 18 U.S.C. § 2 |
| | : | |
| | : | Count Fourteen |
| | : | 18 U.S.C. § 1512(k) |
| | : | |
| | : | Count Fifteen |
| | : | 18 U.S.C. § 1512(b)(3) |
| | : | |
| | : | Count Sixteen |
| | : | 18 U.S.C. § 1519 |
| | : | |
| | : | Count Seventeen |
| | : | 18 U.S.C. § 1512 |

## SUPERSEDING INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

## Introduction

1.    Defendant ELIYAHU ("ELI") WEINSTEIN, a/k/a "Mike Konig," ("WEINSTEIN"), was previously convicted of two separate investment fraud schemes, the first of which he committed from in or around June 2004 through in or around August 2011, and the second of which he committed—while he was on pretrial release—from in or around February 2012 through in or around May 2013. WEINSTEIN's first two investment fraud schemes collectively resulted in losses to investors of approximately $230 million. As a result of his investment fraud schemes, he was ordered to pay, in total, $230,406,799 in restitution to the victims of his crimes, and to serve three years of supervised release.

2.    On or about January 20, 2021, WEINSTEIN began serving his three-year term of supervised release under the supervision of the United States Probation Office ("Probation").

3.    While on supervised release, WEINSTEIN began orchestrating another substantial scheme to defraud investors. Working with Defendant ARYEH ("ARI") BROMBERG ("BROMBERG"), as well as Joel Wittels ("Wittels"), Shlomo Erez ("Erez"), Alaa Hattab ("Hattab"), Christopher Anderson ("Anderson"), and Richard Curry ("Curry") (collectively, with WEINSTEIN, the "Conspirators")—WEINSTEIN and others took tens of millions of dollars from investors by: (a) actively concealing

2

WEINSTEIN's identity and role in purported investments; (b) falsely claiming that the funds would be, and were, used to invest in lucrative deals involving, among other things, COVID-19 masks, scarce baby formula, and first-aid kits bound for Ukraine; and (c) operating a Ponzi-like scheme by using new investor money to pay off earlier investors. Based on these and other material misrepresentations and omissions, WEINSTEIN and his co-conspirators defrauded dozens of investors of millions of dollars in investor funds. As WEINSTEIN acknowledged to BROMBERG and other Conspirators in August 2022: "I finagled, and Ponzied, and lied to people to cover us."

4.    At the same time, WEINSTEIN, BROMBERG, and others conspired to prevent Anderson and Curry from informing WEINSTEIN's Probation Officer, the Court, or law enforcement about WEINSTEIN's, BROMBERG's, and others' crimes and WEINSTEIN's violations of his supervised release conditions, by making false and misleading promises that WEINSTEIN and BROMBERG had tens of millions of dollars in assets to cover payments owed to investors. WEINSTEIN also made numerous false statements to Probation about his income and financial accounts, which BROMBERG aided and abetted by helping WEINSTEIN open bank accounts and credit cards and purchase assets in the names of others.

<u>COUNT ONE</u>
**Conspiracy to Commit Securities Fraud**
**(18 U.S.C. § 371)**

<u>Background</u>

1.    At all times material to this Superseding Indictment:

<u>WEINSTEIN's Prior Fraud Convictions</u>

a.    On or about January 3, 2013, WEINSTEIN pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and engaging in monetary transactions from specified unlawful activity, in violation of 18 U.S.C. § 1957 ("Weinstein I"). WEINSTEIN's criminal activity in Weinstein I resulted in over $224 million in losses to investors.

b.    While on pretrial release in Weinstein I, WEINSTEIN committed a second investment fraud scheme involving false and fraudulent representations related to purported investments in securities and real estate ("Weinstein II"), which resulted in over $6 million in additional losses to investors. On or about September 3, 2014, WEINSTEIN pled guilty in Weinstein II to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; committing wire fraud while on pretrial release, in violation of 18 U.S.C. §§ 1343 and 3147; and engaging in monetary transactions from specified unlawful activity, in violation of 18 U.S.C. § 1957.

<u>The Defendants, Wittels, and the Optimus Entities</u>

c.    WEINSTEIN, BROMBERG, and Wittels each resided in Lakewood, New Jersey.

4

d.      In or around September 2021, BROMBERG and Wittels formed Optimus Investments Inc. ("Optimus"), a New Jersey entity, to raise money for WEINSTEIN to invest in various purported deals. WEINSTEIN was a silent partner in Optimus.

e.      BROMBERG and Wittels served as co-owners of Optimus, and were signatories on Optimus's primary bank account, ending in 7976 (the "Optimus Account").

<u>Anderson, Curry, and the Tryon and Cornerstone Entities</u>

f.      Anderson resided in New Jersey, and Curry resided in Pennsylvania. Together, they co-owned Tryon Management Group LLC ("Tryon"), which was a New Jersey entity formed in or around January 2022. From in or around January 2022 through in or around April 2023, Tryon raised millions of dollars from dozens of investors, including many in New Jersey, to finance Optimus's purported transactions.

g.      On or about May 24, 2022, BROMBERG, Wittels, Anderson, and Curry formed Cornerstone Trading Company, LLC ("Cornerstone"), a New Jersey entity, which was intended to be a partnership between Tryon and Optimus. WEINSTEIN was a silent partner in Cornerstone.

<u>Erez, Hattab, and Additional Entities</u>

h.      Erez was a citizen of Israel who controlled bank accounts and invested in various real estate deals and business ventures for WEINSTEIN's benefit.

i.     Hattab was a United States citizen residing in Canada and purported to serve as a broker for WEINSTEIN and Optimus on deals for medical supplies and other goods. Hattab owned approximately 51% of Saniton Plastic LLC ("Saniton Plastic"), a bottling company which, according to its website, created "interlocking bottle technology" that "reduces up to 35% of carbon emissions." Until in or around August 2022, Hattab and WEINSTEIN had an unwritten agreement that allowed WEINSTEIN to be a 49% owner of Saniton Plastic. Hattab also used the entity Hattab Global Corporation ("Hattab Global") to purchase goods for purported deals involving Tryon, Optimus, and WEINSTEIN.

j.     Company-1 was an entity that purportedly purchased medical supplies from Optimus. Individual-1 was a manager at Company-1, used an alias, and the defendants knew that he was previously convicted of investment fraud.

k.     Company-2 was an entity that could purportedly purchase medical supplies in bulk.

### The Conspiracy

2.     From at least as early as in or around July 2021 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did willfully and knowingly combine, conspire, confederate, and agree with each other and others, by the use of the means and instrumentalities of interstate commerce, and of the mails, to use and employ, in connection with the purchase and sale of

6

securities, manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Goal of the Conspiracy

3.      The goal of the conspiracy was for WEINSTEIN and BROMBERG, together with each other and others, to enrich themselves and their associates by soliciting and obtaining tens of millions of dollars of investors' funds through false and misleading pretenses, representations, omissions, and promises.

### Manner and Means of the Conspiracy

4.      It was part of the conspiracy that:

Obtaining Investor Money by Concealing WEINSTEIN's Identity

a.      In or around July 2021, WEINSTEIN, BROMBERG, and Wittels agreed that BROMBERG and Wittels would raise money from investors for WEINSTEIN to finance the purported purchase and sale of medical supplies and other goods. To conceal WEINSTEIN's identity from investors, BROMBERG, Wittels, and WEINSTEIN agreed that they would use an alias, "Mike Konig," to refer to WEINSTEIN when communicating with investors, potential investors, and business partners. Investors would invest in particular deals and were generally promised

7

double digit returns within a short period of time. At first, most of the investors were friends and family of BROMBERG and Wittels.

b.  In or around September 2021, BROMBERG and Wittels formed Optimus as a vehicle to raise more money from investors for WEINSTEIN's purported deals while continuing to conceal WEINSTEIN's true identity and role on those deals. WEINSTEIN was actively involved in operating Optimus in the shadows.

c.  To further the deception, BROMBERG and Wittels served as the nominal owners of Optimus on corporate documents, checks, corporate bank accounts, and investor documents. In reality, BROMBERG and Wittels took direction from WEINSTEIN on business transactions, including where and when to move investor money.

d.  Based on the material misrepresentations and omissions about WEINSTEIN's true identity, business activities, and his history of fraud, WEINSTEIN, BROMBERG, Wittels, and others solicited and obtained millions of dollars from investors.

<u>Obtaining Investor Money Through Optimus and Tryon:</u>
<u>False Promises of Lucrative Deals and Substantial Returns</u>

e.  In or around July 2021, Curry began investing in purported deals through BROMBERG and Wittels (and secretly, WEINSTEIN).

f.  In or around the Fall of 2021, BROMBERG and Wittels began asking Curry for more money to purportedly finance larger transactions for medical supplies. In or around January 2022, Curry and Anderson formed Tryon to raise money from individual investors to finance these deals for Optimus.

8

   g. BROMBERG and Wittels initially worked with WEINSTEIN to conceal WEINSTEIN's true identity from Anderson and Curry, because they knew Anderson and Curry were raising money for Optimus's supposed deals from individual investors who would not invest if they were aware of WEINSTEIN's fraud convictions and his significant role at Optimus and concerning the deals.

   h. To further this deception, BROMBERG and Wittels introduced WEINSTEIN to Anderson and Curry as "Mike Konig," and WEINSTEIN communicated directly with Anderson and Curry as Mike Konig using an internet-based messaging application (the "Messaging Application").

   i. WEINSTEIN, posing as Mike Konig, provided Anderson and Curry a purported framework for sourcing and funding deals: Optimus would finance or purchase medical supplies and related products and resell them to a third party for a profit, which Optimus would then split with Tryon for the benefit of their investors. Mike Konig (in reality, WEINSTEIN) would find the deals through his various relationships and would get a cut of the supposed profits.

   j. Based on this framework, Anderson and Curry solicited investors through Tryon. Most of the investors were Anderson's and/or Curry's family, friends, or close associates.

   k. Tryon provided investors with notes promising outsized returns, many of which had an interest rate of 48%, an additional "equity" return of between 2% and 10%, and a full return of an investor's principal investment, all within three to six months. The promissory notes also generally included payout schedules, which

often listed purported monthly distributions to investors of interest, equity, and principal (the "Monthly Distributions").

l.      Based on WEINSTEIN's, BROMBERG's, and Wittels's misrepresentations and omissions about WEINSTEIN's true identity, Tryon sent an investor update that described "Mike Konig" as its "Logistics Coordinator and Purchase Order procurement officer." The update touted Mike Konig's track record of brokering large contracts involving millions of units of COVID-19 medical supplies and other similar products.

m.      WEINSTEIN (posing as Mike Konig), BROMBERG, and Wittels provided information to Anderson and Curry about the various Optimus deals for potential and existing Tryon investors. Investors transferred their money to Tryon based on these collective misrepresentations about the Optimus deals and the continued concealment of WEINSTEIN's involvement in the deals and his history of fraud.

n.      In or around January 2022, Anderson and Curry began sending money from Tryon investors directly to Optimus through the Optimus Account.

Obtaining and Using Investor Money to Pay Other Investors

o.      Almost immediately after Tryon started accepting investors' money and transferring it to Optimus, WEINSTEIN's purported deals were not generating the promised returns. As a result, Optimus and Tryon were unable to make the payments to investors they had promised.

p.     Rather than reveal this information to investors, Anderson and Curry agreed with BROMBERG and Wittels, and later WEINSTEIN (posing as Mike Konig), to pool money from existing investors of both Optimus and Tryon and use it to make payments to other investors in a Ponzi-like fashion (the "Ponzi Scheme").

q.     The Conspirators concealed the Ponzi Scheme from investors by falsely telling them that the payouts derived from legitimate investment returns, not other investors' money.

r.     For example, in or around February 2022, Tryon borrowed money from Optimus investors in order to pay back Tryon investors. On or about February 23, 2022, Curry and BROMBERG discussed those payments over the Messaging Application:

> Curry:          It means a LOT that Optimus scraped the money together to pay my investors . . . . I really really appreciate that.
>
> BROMBERG:  Of course we[']re a f*cking team buddy

s.     Similarly, in or around early May 2022, at the request of BROMBERG, Anderson and Curry sent millions of dollars from Tryon's bank account, derived substantially from Tryon investors, to the Optimus Account to pay off Optimus investors as a way to reassure Optimus investors and get them to invest more money in the Ponzi Scheme. WEINSTEIN knew of and approved of these Ponzi Scheme payments.

11

t.      The Ponzi Scheme continued throughout the relevant period of the conspiracy as Optimus repeatedly failed to generate promised returns and Tryon and Optimus were unable to pay distributions to investors.

<u>Purported Deals That the Conspirators
Used to Obtain Investor Money</u>

u.      Although there were little or no profits from WEINSTEIN's purported deals, WEINSTEIN continued to ask BROMBERG, Wittels, Anderson, and Curry to solicit and receive millions of dollars from investors based on new supposed deals from WEINSTEIN.

v.      However, these deals never materialized and in some cases were entirely fake. WEINSTEIN (posing as Mike Konig)—aided by Erez, Hattab, and others—furnished fraudulent documents, including altered bank statements, and false and misleading information to investors to make the deals appear legitimate. WEINSTEIN, BROMBERG, and other conspirators diverted the money raised from investors for these and other supposed deals for a variety of purposes other than what was promised to investors, including to purchase real estate, gamble at casinos, pay for personal expenses, and make payments to earlier investors to prevent the Ponzi Scheme from falling apart.

*The Israeli Insurance Company Deal*

w.      In or around November 2021, WEINSTEIN, acting with and through BROMBERG and Wittels, sought to raise millions of dollars from Optimus investors, including Curry, for what WEINSTEIN claimed was a deal to purchase millions of COVID-19 masks manufactured in Turkey and sell them to a large

12

insurance company based in Israel (the "Israeli Insurance Company Deal"). To make the deal appear legitimate, WEINSTEIN instructed Erez to send an email with numerous false statements. Erez sent the false email to Wittels and BROMBERG, who sent it to Curry. Curry used it to convince another investor ("Victim-1") to invest approximately $1.1 million into the deal. BROMBERG and Wittels then used the approximately $1.1 million from Victim-1 to, among other things, make Ponzi-like payments to earlier Optimus investors.

### The Israeli Pharmaceutical Company Deal

x.    In or around December 2021, WEINSTEIN asked BROMBERG and Wittels to raise millions of dollars from Optimus investors for another purported deal to purchase and sell millions of COVID-19 masks to an Israeli pharmaceutical company, promising some investors a 25% profit in a few weeks (the "Israeli Pharmaceutical Deal"). At WEINSTEIN's direction, BROMBERG and Wittels raised and then transferred millions of dollars of investor money intended for the deal from the Optimus Account to Erez's bank account. WEINSTEIN then directed Erez to divert millions in investor money to, among other things: (1) a real estate deal in Morocco under Erez's name for WEINSTEIN's benefit; (2) purchase a penthouse apartment in Miami, Florida, under Erez's name for WEINSTEIN's benefit; and (3) purchase a diamond necklace and bracelet for WEINSTEIN that WEINSTEIN claimed to have picked out for his family member.

y.    In or around April 2022, WEINSTEIN—aided by Erez, BROMBERG, and Wittels—caused investors to receive a letter falsely reassuring

them about the Israeli Pharmaceutical Deal and explaining why their returns had not come. In fact, as WEINSTEIN and Erez knew, WEINSTEIN and Erez had already fraudulently misappropriated investors' money instead of using it on the Israeli Pharmaceutical Deal.

### The Israeli Army Deal

z.    In or around early 2022, BROMBERG, working with WEINSTEIN, raised an additional approximately $3,150,000 from investors by inventing a fake deal involving the purported purchase of COVID-19 masks for the Israeli Army (the "Israeli Army Deal").    For example, based on BROMBERG's representations about the deal, Curry solicited funds from investors, and on or about January 25, 2022, Curry caused approximately $1,550,000 of victim funds to be wired to Optimus for the deal.

aa.    Subsequently, BROMBERG and Wittels told Anderson and Curry that the deal was delayed for various reasons. In fact, as WEINSTEIN and BROMBERG knew, the deal never existed.

### The Company-1 Deal

bb.    In or around February 2022, WEINSTEIN (posing as Mike Konig) asked Curry and Anderson to raise money from Tryon investors to finance a purported purchase order for approximately 7.3 million COVID-19 test kits from Company-1 (the "Company-1 Deal"). WEINSTEIN—still hiding his true identity and criminal past from Curry and Anderson—also concealed and failed to disclose to Curry and Anderson that Company-1 was associated with Individual-1 and that

Individual-1 was, like WEINSTEIN, using an alias and had a prior conviction for investment fraud. As a result, WEINSTEIN fraudulently caused Curry and Anderson to omit these material facts when soliciting money from Tryon investors, who ultimately invested approximately $2 million for the Company-1 Deal and to finance other purported purchase orders for Company-1.

cc.    To make the purchase order from Company-1 appear legitimate, on or about March 24, 2022, WEINSTEIN directed Erez to send an email to Curry and Anderson falsely representing that Erez had received a $1.6 million deposit from Company-1 for the Company-1 Deal. In fact, WEINSTEIN and Erez knew that Erez never received any deposits from Company-1 for this deal.

dd.    Later, on or about April 1, 2022, when Curry and Anderson wanted more documentation for the deal, WEINSTEIN (posing as Mike Konig) sent Curry and Anderson a fraudulent bank statement to show to an investor. The statement purported to be for an account held by Erez and showed a $1.6 million deposit from Company-1. In fact, as WEINSTEIN knew, no such account existed, and the statement was fake.

ee.    Curry and Anderson subsequently incorporated the fraudulent bank statement and email from Erez into a presentation to potential Tryon investors to solicit money.

### *The First Aid Kit Deal*

ff.    In or around May 2022, WEINSTEIN (posing as Mike Konig) asked Anderson and Curry to raise money from investors to finance the purchase and

delivery of three million first-aid kits ("FAKs") to the United States Agency for International Development ("USAID") to be distributed to the people of Ukraine during the Russia-Ukraine war (the "FAK Deal").

gg.    WEINSTEIN (posing as Mike Konig) provided Anderson and Curry information concerning the FAK Deal to help raise money from potential investors, including documents and information purporting to show that:

(i)    Optimus would acquire three million FAKs from Company-1 and resell them to Company-2 for a profit;

(ii)    Hattab was a broker for the FAK deal;

(iii)    the FAKs would ultimately be distributed to a service-disabled veteran organization that had a contract with USAID; and

(iv)    the FAK deal would generate profits of approximately $84,750,000.

hh.    In or around June 2022, Anderson and Curry provided this information to potential investors in an executive summary, which Anderson and Curry used to raise millions of dollars for the FAK Deal. At WEINSTEIN's direction (posing as Mike Konig), Anderson and Curry sent those funds to Optimus using various bank accounts.

ii.    However, USAID representatives never heard of Company-1 or Company-2, and nobody associated with USAID had ever agreed to buy any FAKs.

jj.    From in or around June 2022 to in or around August 2022, WEINSTEIN asked Hattab to send false and misleading information to Anderson and Curry to make the FAK Deal appear legitimate. For example, at WEINSTEIN's direction, Hattab used contacts in Vietnam to create false and misleading videos of a

facility purportedly manufacturing FAKs. Relying on these misleading videos and other misrepresentations, Anderson and Curry raised millions of dollars from investors for the FAK Deal.

kk.    WEINSTEIN misappropriated the FAK Deal money and used it to fund, among other things, lavish gambling trips to casinos. In a subsequent meeting that was audio recorded without WEINSTEIN's knowledge, WEINSTEIN, in the presence of BROMBERG and others, admitted that the money for the FAK Deal was instead used for other purposes.

### *The Baby Formula Deals*

ll.    In or around May 2022, Anderson and Curry raised money from Tryon investors for WEINSTEIN (posing as Mike Konig) to finance a purchase order for shipping containers of baby formula for one of Hattab's companies ("Baby Formula Deal 1"). WEINSTEIN and Hattab were unable to get the formula they had promised. Rather than come clean with Anderson and Curry, WEINSTEIN asked Hattab to lie to Anderson and Curry to make it seem as though the deal was successful, in hopes of raising yet more money from Anderson and Curry, and their investors, for more deals. For example, at WEINSTEIN's direction, Hattab created a fraudulently altered bank statement for one of Hattab's accounts to make it look like Hattab received money for the Baby Formula Deal 1 even though he had not.

mm.   On or about July 29, 2022, WEINSTEIN (posing as Mike Konig) sent the fraudulent bank statement to Anderson and Curry as proof the deal was successful. Curry and Anderson, in turn, relied on the fraudulent bank statement and

17

other false information WEINSTEIN (posing as Mike Konig) and Hattab provided to raise more money from investors for a second formula deal. WEINSTEIN (posing as Mike Konig) also provided Curry and Anderson with approximately four fraudulent bills of lading ("BOLs") showing that the formula from the Baby Formula Deal 1 had been shipped from Turkey to Newark, New Jersey.

nn.    In or around early August 2022, WEINSTEIN (posing as Mike Konig) asked Anderson and Curry to raise more money to finance the purchase of additional shipping containers of baby formula ("Baby Formula Deal 2"). WEINSTEIN again provided false documents to Anderson and Curry for potential investors, including approximately 30 fraudulent BOLs showing that the formula for the Baby Formula 2 Deal had been shipped from Turkey to Newark, New Jersey.

oo.    Relying on these BOLs and other information, Anderson and Curry raised millions of dollars from Tryon investors for Baby Formula Deal 2. For example, on or about September 9, 2022, one of the victim investors transferred $50,000 to Tryon via interstate wire based on Tryon's representations about the purported deal.

pp.    In fact, all of the BOLs were fabricated and altered, with no actual shipments corresponding with the information on the BOLs.

qq.    In a subsequent meeting that was audio recorded without WEINSTEIN's knowledge, WEINSTEIN, in the presence of BROMBERG and others, told Anderson and Curry that the BOLs were false, and that WEINSTEIN took full responsibility for those false BOLs.

<u>The Misappropriation of Investor Money</u>

rr.    WEINSTEIN directed BROMBERG and Wittels to transfer substantial amounts of the proceeds of the conspiracy for his personal benefit and attempted to cover it up by diverting investor money through a web of nominee bank accounts and related parties.

ss.    For example, on or about February 3, 2022, BROMBERG and Wittels wired from the Optimus Account approximately $812,377.82, derived primarily from investor money intended for purported medical supply deals, to a title company to purchase a property in Jackson, New Jersey (the "Jackson Property"). At WEINSTEIN's direction, BROMBERG and Wittels used a shell company that Wittels owned to purchase the property for WEINSTEIN and his family to use as a second home.

tt.    Similarly, from in or around May 2022 to in or around June 2022, WEINSTEIN directed BROMBERG and Wittels to wire millions of dollars from the Optimus Account, derived primarily from investor money, to Hattab's bank account and to the account of another individual ("Individual-2"). WEINSTEIN then asked Hattab and Individual-2 to use the money to fund lavish trips to casinos where they gambled the money for WEINSTEIN.

<u>The August 2022 Meetings</u>

uu.    In or around late August 2022, the Conspirators had a series of meetings in which WEINSTEIN revealed his true identity to Curry and Anderson, in the presence of BROMBERG, among others. In these meetings, WEINSTEIN also

admitted to making various false statements about purported Optimus deals and to misappropriating Tryon investor money. Both during and after these August 2022 meetings, the Conspirators agreed to continue concealing WEINSTEIN's identity from investors and to raise additional money to pay off existing Tryon investors, all in an effort to stop the Ponzi Scheme from falling apart and to cover up the Conspirators' fraud.

        vv.    Consistent with that plan, the Conspirators worked together to mislead and conceal material facts from investors, including that:

    (i)    Mike Konig was actually WEINSTEIN and had a history of fraud;

    (ii)   WEINSTEIN was the source of nearly every purported deal that formed the basis of Tryon's and Optimus's investments;

   (iii)  WEINSTEIN admitted to having provided false and misleading information about several of those deals;

   (iv)  WEINSTEIN misappropriated Tryon investor money for other purposes; and

    (v)   neither Tryon nor Optimus could account for where and how WEINSTEIN spent investor money.

        ww.    Following the meetings, the Conspirators continued to try to raise money for WEINSTEIN, while also continuing to conceal from both current and new investors WEINSTEIN's identity, the Ponzi-like nature of the scheme, and WEINSTEIN's misappropriation of investor funds. WEINSTEIN and BROMBERG, together with Erez, also falsely promised Anderson and Curry that they would liquidate tens of millions in assets that WEINSTEIN and BROMBERG controlled to pay back investors and cover up their fraud. In the end, WEINSTEIN and

BROMBERG failed to generate any significant money to repay the tens of millions of dollars in investor money that had been lost.

## Overt Acts

5.     To further the conspiracy and effect its illegal objects, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

a.     On or about September 10, 2021, BROMBERG and Wittels opened the Optimus Account.

b.     On or about December 16, 2021, BROMBERG and Wittels wired approximately $3.95 million from the Optimus Account to Erez's account.

c.     On or about February 7, 2022, Curry asked BROMBERG over the Messaging Application to send money to Tryon in order to pay its investors if the purported deal profits did not materialize: "Any chance if [deal] money doesn't come back in time optimus could spot the money for my investors? It's only like 1.252mm without my profits." On or about February 10, 2022, using pooled investor funds, Optimus wired Tryon approximately $1.252 million to cover payments due to investors based on purported deal-related profits that did not actually exist.

d.     On or about April 1, 2022, WEINSTEIN sent Curry and Anderson a fraudulent bank statement over the Messaging Application to show to a potential investor.

e.      On or about June 9, 2022, WEINSTEIN caused approximately $1,000,000 to be wired from the Optimus Account to Hattab's account to use for gambling.

f.      On or about August 3, 2022, Anderson messaged BROMBERG and other Conspirators on the Messaging Application, "I can wire 100k from me to optimus to cover I just need confirmation," which Anderson said would include "75k" for one of Optimus's victims ("Victim-2"). On or about the same day, using pooled investor money, Anderson caused another entity that the Conspirators controlled to wire Optimus approximately $100,000 to cover the funds owed to Victim-2. Subsequently, on or about August 10, 2022, BROMBERG and Wittels caused approximately $125,000 to be wired from Optimus to Victim-2, which they described as including a "75K Payment" for one of the deals in which Victim-2 had invested.

g.      On or about August 16, 2022, WEINSTEIN sent Anderson and Curry approximately 30 false and fraudulent BOLs over the Messaging Application.

h.      On or about August 26, 2022, in or around Branchburg, New Jersey, WEINSTEIN and BROMBERG met with Hattab, Curry, and Anderson, during which meeting:

        (i)      WEINSTEIN, BROMBERG, and the other meeting participants agreed to continue concealing WEINSTEIN's identity and to use Saniton Plastic and other assets to appease/pay back investors without revealing WEINSTEIN's identity or the source of the funds;

        (ii)     WEINSTEIN told Anderson and Curry: "I can't do this with 'Mike [Konig]' anymore. I am Eli Weinstein."

(iii) BROMBERG and Anderson discussed the implications of concealing WEINSTEIN's identity:

| | |
|---|---|
| Anderson: | . . . [t]he risk is you didn't tell us who Mike [Konig] was . . . You concealed a criminal – when this conversation happens, in a court room with depositions – |
| BROMBERG: | Forget it. Then everyone goes down. |

i.    On or about August 30, 2022, via the Messaging Application, BROMBERG and Curry discussed lying to investors:

| | |
|---|---|
| Curry: | This is life or death, I'm serious |
| BROMBERG: | Yes i know |
| Curry: | I'm lying now to every single person I know and I'm dying man. We need capital badly |
| BROMBERG: | Yes I know buddy |

j.    On or about August 29, 2022 and August 31, 2022, WEINSTEIN and BROMBERG met with Wittels, Erez, and Curry in or around Allentown, Pennsylvania, and agreed to continue concealing WEINSTEIN's identity and running the Ponzi Scheme.

k.    During the meeting on or about August 31, 2022:

(i) WEINSTEIN and BROMBERG acknowledged that investors would not have invested if they knew WEINSTEIN's true identity, and that concealing his identity was essential to obtaining investor money:

| | |
|---|---|
| WEINSTEIN: | There's another problem. We collectively did not tell everyone who I was, no one would ever give you a penny if they knew who I was . . . because I have a bad reputation. |

23

BROMBERG:          Correct.

 (ii) When discussing purported Optimus deals, WEINSTEIN admitted that he "misrepresented specific things" and "misled" and "lied about transactions."

 (iii) WEINSTEIN acknowledged that the FAK Deal did not happen and claimed Hattab misappropriated the money for Saniton Plastic.

 (iv) WEINSTEIN admitted to engaging in the Ponzi Scheme, stating "I finagled, and Ponzied, and lied to people to cover us."

 l. On or about October 23, 2022, Curry sent a message over the Messaging Application to BROMBERG, which stated, "I slept for 12 hours straight the first night . . . And then proceeded to lie to all my investors, which was real fun." BROMBERG responded, "Sorry[.]"

 In violation of Title 18, United States Code, Section 371.

# COUNT TWO
**(Securities Fraud)**

1.      The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment are realleged here.

2.      From at least as early as in or around July 2021 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices, and courses of business which would and did operate as a fraud and deceit upon one or more investors and prospective investors in Tryon and Optimus, in connection with the purchase and sale of investments in Tryon and/or Optimus directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.l0b-5; and Title 18, United States Code, Section 2.

## COUNT THREE
### (Conspiracy to Commit Wire Fraud)

1.    The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment are realleged here.

2.    From at least as early as in or around July 2021 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly and intentionally conspire to devise a scheme and artifice to defraud investors and others, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

## COUNTS FOUR through SIX
### (Wire Fraud)

1.      The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment are realleged here.

2.      On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,<br>
a/k/a "Mike Konig," and<br>
ARYEH ("ARI") BROMBERG,

did knowingly and intentionally devise a scheme and artifice to defraud investors and others, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as set forth more fully below, each such wire transmission constituting a separate count of this Superseding Indictment:

| Count | Approximate Date | Description |
|:-----:|:----------------:|:------------|
| 4 | January 25, 2022 | Interstate transfer of approximately $1,550,000 from victims to Optimus for an investment in the Israeli Army Deal |
| 5 | February 2, 2022 | Interstate wire of approximately $575,000 from Tryon to Optimus for an investment |
| 6 | May 6, 2022 | Interstate wire of approximately $176,221 from Optimus to an Optimus investor |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT SEVEN
**(Conspiracy to Launder Monetary Instruments)**

1.      The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment and Paragraph 2 of Counts Three through Six are realleged here.

2.      From at least as early as in or around July 2021 through in or around July 2023, in the District of New Jersey and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly combine, conspire, and agree with each other and with others to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, namely:

a.      to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, the scheme to defraud Optimus and Tryon investors, in violation of Title 18, United States Code, Section 1343 (the "Fraud Scheme"), with the intent to promote the carrying on of specified unlawful activity, that is the Fraud Scheme, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i);

b.      to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions

involved the proceeds of specified unlawful activity, that is, the Fraud Scheme, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      c.    to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the Fraud Scheme, contrary to Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

## COUNT EIGHT
### (Money Laundering)

1.       The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment and Paragraph 2 of Counts Three through Six are realleged here.

2.       On or about February 3, 2022, in the District of New Jersey and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly engage and attempt to engage, in the following monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the Fraud Scheme.

| Count | Approximate Date | Transaction | Amount |
|-------|------------------|-------------|--------|
| 8 | February 3, 2022 | Wire from title company to a seller of the Jackson Property | $396,988.82 |

In violation of Title 18, United States Code, Section 1957(a) and Section 2.

## COUNT NINE
### (Conspiracy to Make False Statements to and Conceal Material Facts from the United States Probation Office)

1.      The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment are realleged here.

2.      At all times relevant to this Superseding Indictment:

### Background and Overview

a.      As a result of WEINSTEIN's commission of two separate investment fraud schemes, WEINSTEIN was required by two judgments (the "Judgments") to serve three years of supervised release and pay restitution to his victims, the outstanding balance of which totaled more than $228 million dollars. Pursuant to the Judgments, WEINSTEIN was required to comply with certain standard conditions of supervised release, including not maintaining and/or opening any new checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of Probation.

b.      In addition, in or around February 2021, WEINSTEIN signed and acknowledged the Judgment Modification, which was recommended by his supervising Senior United States Probation Officer (the "Probation Officer") and added additional conditions of supervised release that precluded WEINSTEIN from engaging in certain business and other activities while on supervised release. These additional conditions prohibited WEINSTEIN from: (a) incurring new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of Probation; (b) encumbering

31

or liquidating interest in assets, except in service of paying restitution; (c) playing a role, directly or indirectly, in soliciting money from investors; (d) being involved in any commercial or personal real estate transactions which would result in potential earned income during supervised release; (e) being employed, salaried or otherwise, as a consultant, advisor, investment manager, or investor in any capacity involving any form of real estate transaction or equity purchase; and (f) engaging in self-employment, without the approval of Probation.

      c.     WEINSTEIN and BROMBERG agreed with each other and others to help WEINSTEIN to conceal from and make materially false and misleading statements to Probation about, among other things, WEINSTEIN's unsanctioned business activities, financial accounts, credit card charges and monetary obligations, real estate transactions, and encumbrance and liquidation of interests in assets.

### The Conspiracy

3.     From in or around January 2021 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly and willfully combine, conspire, confederate, and agree with each other and others to falsify, conceal, and cover up by a trick, scheme, and device a material fact and make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the judicial branch of the

Government of the United States, contrary to Title 18, United States Code, Sections 1001(a)(1) and (a)(2).

## Goal of the Conspiracy

4.     The goal of the conspiracy was for WEINSTEIN, aided by BROMBERG and others, to make materially false and misleading statements and conceal from Probation WEINSTEIN's unsanctioned business activities with BROMBERG and others, including his unsanctioned financial accounts, credit card charges and monetary obligations, real estate transactions, and encumbrance and liquidation of interests in assets.

## Manner and Means of the Conspiracy

5.     It was part of the conspiracy that:

a.     WEINSTEIN, BROMBERG, and others agreed to conceal WEINSTEIN's unsanctioned business activities, financial accounts, credit charges and monetary obligations, real estate transactions, and encumbrances and liquidation of interests in assets from Probation.

b.     WEINSTEIN, BROMBERG, and others made WEINSTEIN a silent partner in Optimus and other business ventures, through which WEINSTEIN derived substantial income.

c.     WEINSTEIN, BROMBERG, and others helped WEINSTEIN receive such income in ways that were not readily traceable to WEINSTEIN.

d.     WEINSTEIN, BROMBERG, and others opened and maintained multiple financial accounts for WEINSTEIN's use but agreed not to put WEINSTEIN on any of the paperwork.

e.    WEINSTEIN, BROMBERG, and others engaged in real estate transactions on WEINSTEIN's behalf, without putting WEINSTEIN on any of the paperwork.

f.    When Probation asked WEINSTEIN about his work activities and finances, WEINSTEIN repeatedly made false statements and failed to disclose his finances, investment activities, and financial dealings with BROMBERG and others.

g.    By working with WEINSTEIN to conceal these activities—all of which explicitly violated the terms of his supervised release—WEINSTEIN, BROMBERG, and others caused WEINSTEIN's Probation Officer to make a false statement to the District Court. Specifically, on or about December 15, 2022, WEINSTEIN's Probation Officer reported to the Court that WEINSTEIN was in compliance with his conditions of supervision, including "compl[ying] with [Probation's] efforts to verify the legitimacy of his income and nature of employment."

## Overt Acts

6.    To further the conspiracy and effect its illegal objects, WEINSTEIN, BROMBERG, and other members of the conspiracy committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a.    In or around April 2021, BROMBERG and WEINSTEIN asked Wittels to lease a luxury car in Wittels's name, but for WEINSTEIN's use, and to pay for the car insurance.

Case 3:24-cr-00128-MAS    Document 172    Filed 10/10/24    Page 35 of 49 PageID: 1710

b.      In or around May 2021, BROMBERG and WEINSTEIN asked Wittels to open a credit card for WEINSTEIN in the name of one of WEINSTEIN's children, on which WEINSTEIN spent more than $100,000.

c.      In or around September 2021, BROMBERG and Wittels formed Optimus to raise money for WEINSTEIN to invest in various purported deals, but without putting WEINSTEIN on any of the paperwork.

d.      On or about September 10, 2021, BROMBERG and Wittels opened the Optimus Account, which they used to conduct transactions as directed by WEINSTEIN.

e.      On or about February 3, 2022, at WEINSTEIN's direction, BROMBERG and Wittels purchased the Jackson Property for WEINSTEIN and his family, in the name of a shell company owned by Wittels.

f.      On or about August 26, 2022, during a meeting between WEINSTEIN, BROMBERG, Hattab, Curry, and Anderson in or around Branchburg, New Jersey:

      i.   WEINSTEIN stated that he had "70 million dollars sitting in a bank account."

      ii.  Speaking to BROMBERG and then addressing the other Conspirators at the meeting, WEINSTEIN said, "You've [BROMBERG] seen my [bank] account? Believe me, just let me get off Probation guys."

      iii. BROMBERG confirmed that he had seen WEINSTEIN's account containing approximately $70 million.

      iv.  WEINSTEIN said: "I just told you something that no one in the world knows because I hid money. Get it?"

     v. WEINSTEIN acknowledged why he was promising assets to Anderson and Curry: "I would be happier, happier to go to jail after you got paid. . . I want Chris [Anderson] and Richard [Curry] to have it [the money]. . . whether you see me write that check tomorrow or you see from Shlomo [Erez] what the assets are . . . I'm authentic with you and catch me in a lie . . . walk me straight where you want to, call Probation . . ." In response, Anderson reassured WEINSTEIN: ". . . if this works out, this story dies here. This story dies here. We never tell anybody." WEINSTEIN responded: ". . .What I say to you is please keep it discreet in this room, so I can help you – help you, help yourselves, because one violation is problematic." Later in the meeting, WEINSTEIN again repeated: "like I said, catch me in a lie, you can walk right into Probation."

    g. On or about August 31, 2022, during a meeting with Wittels, Erez, and Curry, WEINSTEIN and BROMBERG discussed the need to conceal WEINSTEIN's financial stake in Saniton Plastic from the "feds":

| | |
|---|---|
| WEINSTEIN: | Do you think the feds won't take Saniton away? . . . They absolutely will. |
| BROMBERG: | They will in a f*cking second. |
| WEINSTEIN: | No question . . . I'm just saying it's a fact. They're gonna do a claw back on every business deal that I'm going through, every single investment. |

    h. On or about December 2, 2021, during a discussion with the Probation Officer, WEINSTEIN falsely denied earning any type of wage or income by any means since being released from prison in or around January 2021.

    i. On or about June 17, 2022, during a discussion with the Probation Officer, WEINSTEIN falsely claimed he received no income in 2021 and had provided all paystubs so far for his 2022 income.

36

j.    On or about November 9, 2022, during a discussion with the Probation Officer, WEINSTEIN falsely denied receiving any income during his period of supervised release from anyone other than his then-current employer.

k.    On or about January 18, 2023, during a discussion with the Probation Officer, WEINSTEIN falsely indicated that he had no other accounts that Probation was not aware of.

In violation of Title 18, United States Code, Section 371.

<u>COUNTS TEN through THIRTEEN</u>
**(False Statements to and Concealment of Material Facts from the
United States Probation Office)**

1.      The allegations set forth in the Introduction and Paragraphs 1 through

5 of Count One of this Superseding Indictment and Paragraphs 1 through 6 of Count

Nine of this Superseding Indictment are realleged here.

2.      On or about the dates set forth below, in the District of New Jersey, and

elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and

device a material fact and made materially false, fictitious, and fraudulent

statements and representations in a matter within the jurisdiction of the judicial

branch of the Government of the United States, as set forth more fully below, each

such false statement and concealment of material facts constituting a separate count

of this Superseding Indictment:

| Count | Approximate Date | Description |
|:---:|:---:|:---|
| 10 | December 2, 2021 | During a discussion with the Probation Officer, WEINSTEIN falsely denied earning any type of wage or income by any means since he was released in January 2021 |
| 11 | June 17, 2022 | During a discussion with the Probation Officer, WEINSTEIN claimed he received no income in 2021 and had provided all paystubs so far for his 2022 income |
| 12 | November 9, 2022 | During a discussion with the Probation Officer, WEINSTEIN denied receiving any income at that time and during supervised release from anyone other than his then-current employer |

| 13 | January 18, 2023 | During a discussion with the Probation Officer, WEINSTEIN indicated that he had no other accounts that Probation was not aware of |

In violation of Title 18, United States Code, Sections 1001(a)(1) and (a)(2) and Section 2.

## COUNT FOURTEEN
### (Conspiracy to Obstruct Justice)

1.    The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One of this Superseding Indictment and Paragraphs 1 through 6 of Count Nine of this Superseding Indictment are realleged here.

2.    From in or around August 2022 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

did knowingly and willfully conspire and agree to knowingly and corruptly persuade, attempt to corruptly persuade, and engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a federal law enforcement officer or judge of the United States of information relating to the commission and possible commission of a federal offense and a violation of conditions of supervised release, contrary to Title 18, United States Code, Section 1512(b)(3).

### Goal of the Conspiracy

3.    The goal of the conspiracy was for WEINSTEIN, BROMBERG, and others to hinder, delay, and prevent Curry and Anderson from reporting to Probation, federal law enforcement, or the Court WEINSTEIN's, BROMBERG's, and others' criminal offenses and WEINSTEIN's violation of his conditions of supervised release.

### Manner and Means of the Conspiracy

4.    It was part of the conspiracy that:

a.　In or around August 2022, once WEINSTEIN admitted his true identity to Curry and Anderson, WEINSTEIN, BROMBERG, and others became concerned that Curry and Anderson would report their criminal activities and WEINSTEIN's violations of his conditions of supervised release, including to Probation, law enforcement, and the Court.

b.　WEINSTEIN, BROMBERG, and others thereafter corruptly persuaded, and engaged in misleading conduct toward, Curry and Anderson to hinder, delay, and prevent such disclosures, including by making false and misleading promises that WEINSTEIN and BROMBERG had tens of millions of dollars in assets to cover investor payments, that they would liquidate such assets to pay back Curry's and Anderson's investors, and that WEINSTEIN would be unable to provide such assets if Curry and Anderson reported him.

## Overt Acts

5.　To further the conspiracy and effect its illegal objects, WEINSTEIN, BROMBERG, and other members of the conspiracy committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a.　On or about August 26, 2022, during a meeting between WEINSTEIN, BROMBERG, Hattab, Curry, and Anderson in or around Branchburg, New Jersey, WEINSTEIN and BROMBERG made representations about using WEINSTEIN's assets to pay back investors and discussed not sharing information outside the meeting because it would be problematic if WEINSTEIN was found to have violated his conditions of supervised release:

    i.  WEINSTEIN stated that he had "70 million dollars sitting in a bank account."

    ii.  Speaking to BROMBERG and then addressing the other Conspirators at the meeting, WEINSTEIN said, "You've [BROMBERG] seen my [bank] account? Believe me, just let me get off Probation guys."

    iii.  BROMBERG confirmed that he had seen WEINSTEIN's account containing approximately $70 million.

    iv.  WEINSTEIN said: "I just told you something that no one in the world knows because I hid money. Get it?"

b.    During the meeting on or about August 26, 2022, WEINSTEIN acknowledged why he was promising assets to Anderson and Curry: "I would be happier, happier to go to jail after you got paid. . . I want Chris [Anderson] and Richard [Curry] to have it [the money]. . . whether you see me write that check tomorrow or you see from Shlomo [Erez] what the assets are . . . I'm authentic with you and catch me in a lie . . . walk me straight where you want to, call Probation . . ." In response, Anderson reassured WEINSTEIN: ". . . if this works out, this story dies here. This story dies here. We never tell anybody." WEINSTEIN responded: ". . .What I say to you is please keep it discreet in this room, so I can help you – help you, help yourselves, because one violation is problematic." Later in the meeting, WEINSTEIN again repeated: "like I said, catch me in a lie, you can walk right into Probation."

c.    During the meeting on or about August 26, 2022, BROMBERG discussed the potential consequences if their efforts to hide WEINSTEIN's identity were revealed:

Anderson:    . . . [t]he risk is you didn't tell us who Mike [Konig] was . . . You concealed a criminal — when this conversation happens, in a court room with depositions–

BROMBERG:    Forget it. Then everyone goes down.

      d.    On or about August 29, 2022, in or around Allentown, Pennsylvania, WEINSTEIN and BROMBERG met with Wittels, Erez, and Curry, during which meeting WEINSTEIN stated that Erez secretly controlled $40 million in real estate that should be "transferred" to Curry and Anderson.

      e.    On or about August 31, 2022, during a meeting with Wittels, Erez, and Curry, WEINSTEIN and BROMBERG discussed the need to conceal WEINSTEIN's financial stake in Saniton Plastic from the "feds":

WEINSTEIN:    Do you think the feds won't take Saniton away? . . . They absolutely will.

BROMBERG:    They will in a f*cking second.

WEINSTEIN:    No question . . . I'm just saying it's a fact. They're gonna do a claw back on every business deal that I'm going through, every single investment.

In violation of Title 18, United States Code, Section 1512(k).

## COUNT FIFTEEN
### (Obstruction of Justice)

1.      The allegations set forth in the following paragraphs of the Superseding Indictment are realleged here: Paragraphs 1 through 5 of Count One, Paragraphs 1 through 6 of Count Nine, and Paragraphs 1 through 5 of Count Fourteen.

2.      From in or around August 2022 through in or around July 2023, in the District of New Jersey, and elsewhere, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

knowingly and corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a federal law enforcement officer or judge of the United States of information relating to the commission and possible commission of a federal offense and a violation of conditions of supervised release.

In violation of Title 18, United States Code, Section 1512(b)(3) and Section 2.

44

## COUNT SIXTEEN
**(Destruction of Objects to Impede a Federal Investigation)**

On or about July 19, 2023, in the District of New Jersey, and elsewhere, the defendant,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig,"

knowingly altered, destroyed, mutilated, concealed, and covered up a record, document, or tangible object with the intent to impede, obstruct, or influence a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation, in that defendant WEINSTEIN destroyed a Samsung SM-G986U1 cellular telephone assigned telephone number 848-245-4452, which contained evidence of the matter under investigation.

In violation of Title 18, United States Code, Section 1519.

## COUNT SEVENTEEN
### (Obstruction of Justice)

1.      The allegations set forth in the Introduction and Paragraphs 1 through 5 of Count One the Superseding Indictment are realleged here.

2.      On or about July 19, 2023, Hattab was scheduled to take a flight from Ottawa, Canada to Newark, New Jersey, to meet with WEINSTEIN, BROMBERG, and other co-conspirators later that day.

3.      Prior to taking off, WEINSTEIN told Hattab not to come to the United States and that the FBI was at WEINSTEIN's house.

4.      As a result, Hattab deboarded the plane before it took off, and subsequently travelled from Canada to Lebanon.

5.      On or about July 19, 2023, in the District of New Jersey, and elsewhere, the defendant,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig,"

attempted to and did corruptly obstruct, influence, and impede an official proceeding, a Federal Grand Jury investigation in the District of New Jersey.

In violation of Title 18, United States Code, Section 1512(c)(2).

## FORFEITURE ALLEGATION ONE

Upon conviction of the offenses charged in Counts One through Six, Fourteen, Fifteen and Seventeen of this Superseding Indictment, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

## FORFEITURE ALLEGATION TWO

Upon conviction of the offenses charged in Counts Seven and Eight of this Superseding Indictment, the defendants,

ELIYAHU ("ELI") WEINSTEIN,
a/k/a "Mike Konig," and
ARYEH ("ARI") BROMBERG,

shall forfeited to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

47

## Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third person;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

A TRUE BILL

FOREPERSON

Philip R. Sellinger
PHILIP R. SELLINGER
UNITED STATES ATTORNEY

48

CASE NUMBER: 24-128 (MAS)

# United States District Court
# District of New Jersey

### UNITED STATES OF AMERICA

v.

### ELIYAHU ("ELI") WEINSTEIN, a/k/a "Mike Konig," and ARYEH ("ARI") BROMBERG

# SUPERSEDING INDICTMENT FOR

18 U.S.C. § 371
15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957(a)
18 U.S.C. § 1001
18 U.S.C. § 1512(k)
18 U.S.C. § 1512(b)(3)
18 U.S.C. § 1519
18 U.S.C. § 1512(c)(2)

A True Bill,



Foreperson

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

JONATHAN FAYER, CAROLYN SILANE, AND MARK J. PESCE
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
(973) 645-3979